367 So.2d 836 (1979)
Hiram DEVORE, Individually and Annie Inez Devore
v.
HOBART MANUFACTURING COMPANY, Cleveland Manufacturing Company, and Cleveland Consolidated, Inc.
No. 62810.
Supreme Court of Louisiana.
January 29, 1979.
Rehearing Denied March 5, 1979.
*837 Dee D. Drell, Gravel, Roy & Burnes, Alexandria, for plaintiff-applicant.
Grove Stafford, Jr. and John C. Pickels, Stafford, Randow, O'Neal & Smith, Edwin O. Ware, III, Dist. Atty., Gus A. Voltz, Jr., Asst. Dist. Atty., for Sybil T. Jones and the Rapides Parish School Bd., defendants-respondents.
CALOGERO, Justice[*]
Plaintiff Annie Devore, a school board employee who was injured on October 2, 1974 when boiling water spewed out of a double steamer in a school kitchen, and whose claim for damages against the steamer's manufacturer prescribed for failure to sue in one year, contends in this litigation that she is entitled to recover from the Rapides Parish School Board and their Director of School Food Service, Mrs. Sybil T. Jones, because defendants negligently misadvised her and her lawyer that the manufacturer of the steamer was Cleveland Manufacturing Company, rather than Cleveland Range Company.
The trial court dismissed plaintiff's petition on exception of no cause of action and the Court of Appeal affirmed. 359 So.2d 1108.
We recite the following chronology of asserted and/or conceded facts:
October 2, 1974Plaintiff's accident and injury occurred.
July 30, 1975Plaintiff's attorney wrote the school board requesting the name of the manufacturer of the steamer.
August 15, 1975Sybil T. Jones, Director of School Food Service wrote plaintiff's attorney advising that the manufacturer of the equipment was Cleveland Manufacturing Company of Cleveland, Ohio.
Between August 15, 1975 and September 30, 1975Plaintiff's attorney determined that Cleveland Manufacturing Company was not listed by the Secretary of State as a foreign corporation authorized to do and/or doing business in Louisiana (it was stipulated that Cleveland Range Company was likewise not listed); plaintiff's attorney consulted the Secretary of State's listing to determine the names and addresses of all corporations having names similar to Cleveland Manufacturing Company and discovered therein only Cleveland Consolidated, Inc.
September 30, 1975Suit was filed against Cleveland Consolidated, Inc., Hobart Manufacturing Company, a company the name of which plaintiff apparently gave her attorney, and Cleveland Manufacturing Company, the name furnished by Mrs. Jones.
October 1, 1975Anniversary date of the accident.
June 18, 1976Plaintiff by supplemental petition sued Cleveland Range Company and, in the alternative, defendants Rapides Parish School Board and Sybil T. Jones.
December 6, 1977An exception of prescription by Cleveland Range Company was maintained.
Plaintiff's petition against Rapides Parish School Board and Mrs. Jones states:

"7.
On July 30, 1975, counsel for petitioners wrote a letter to the Rapides Parish *838 School Board requesting information as to the manufacturer of the equipment alleged to have caused the aforesaid injuries to petitioner, ANNIE INEZ DEVORE; defendant Rapides Parish School Board was at that time, and still is, the owner and custodian of the aforesaid equipment, and, in response to the aforesaid request by counsel for petitioners, the said Rapides Parish School Board through Mrs. Sybil T. Jones, Director of School Food Services, on August 15, 1975, replied to counsel for petitioners, in writing, that the manufacturer of the equipment referenced above was `Cleveland Manufacturing Company of Cleveland, Ohio.' Petitioners, relying on the representations made by the said Mrs. Jones filed this action against Cleveland Manufacturing Company.

8.
Defendant, Sybil T. Jones, at all times knew or should have known that the actual manufacturer of the aforesaid equipment was the Cleveland Range Company, and, for reasons unknown to petitioners, negligently misinformed petitioner's counsel as to the proper manufacturer of the steamer. Said representations by Mrs. Jones were negligent, and said Rapides Parish School Board as employer of petitioner ANNIE INEZ DEVORE, and as owner and custodian of the steamer, had a duty to petitioners to properly apprise them of the name of the proper manufacturer of the said equipment and defendants, Rapides Parish School Board and/or Sybil T. Jones breached that duty; further petitioners had a right to rely upon said representations because of defendant School Board's position as employer of petitioner, ANNIE INEZ DEVORE, and as owner and custodian of the steamer."
Neither fraud nor intentional misrepresentation was alleged in the petition; nor are these elements arguably present in the case.
Plaintiff in the trial court and in the Court of Appeal asserted that Article 2315 and Article 2316 of the Louisiana Civil Code support this cause of action for negligent misrepresentation. While they cited no Louisiana cases on point they did cite and argue as analogous support for their position Restatement (Second) of Torts, Section 552.[1]
The Court of Appeal determined that Louisiana law did not afford plaintiff a cause of action upon the recited facts and concluded that even if they were to hold pertinent in Louisiana the common law cause of action for negligent misrepresentation referred to and defined in the Restatement that plaintiff had not met the pecuniary interest test set forth therein. The Court of Appeal further discussed and found without merit the claim that Mrs. Jones' letter was incident to a stipulation pour autri existing by virtue of the insurance contract between the Board, plaintiff's employer, and its compensation insurer, and also a good Samaritan argument urging that even absent any duty to furnish correct information, the party who gratuitously undertakes a response to an information request assumes a duty of care. 359 So.2d at 1111.
*839 We are in agreement with the trial and intermediate appellate courts' conclusions set forth in White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2nd Cir. 1974) that Civil Code articles 2315 and 2316 ". . . afford a broad ambit of protection for persons damaged by intentional and negligent acts of others . . ." sufficient to encompass a cause of action for negligent misrepresentation. However, we are not required in the resolution of this case to determine fully the extent to which and the conditions under which our law affords a cause of action for such a tort. We find it sufficient to conclude that here plaintiff has not stated a cause of action against defendants.
We are not here concerned with fraudulent misrepresentation (see White v. Lamar Realty, Inc. supra and Restatement [Second] of Torts, Section 549, discussing damages for fraudulent misrepresentation). Nor do we have here negligent misrepresentation that results in physical harm (see Restatement [Second] of Torts, Section 311). Rather we have here a claim of negligent misrepresentation alleged to have caused pecuniary loss.
For plaintiff to prevail here our Louisiana law would require the existence of a legal duty on the part of the defendants to supply correct information. On the facts set forth in plaintiff's petitions, no such legal duty appears to exist. And it is to the facts set forth in the petitions that we must direct our attention, for in passing upon an exception of no cause of action the correctness of well-pleaded factual allegations is conceded and the issue for determination is whether the face of the petition presents a case which legally entitles the plaintiff to the redress sought. Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975).
Our inquiry must further focus on whether there was indeed an affirmative duty to insure that the information given was correct, for negligence is the breach of a legal duty, a sine qua non in a tort action such as this. See Callais v. All State Insurance Co., 334 So.2d 692 (La.1976) (on rehearing).
Plaintiff falls short of stating a cause of action. Under the facts alleged in the petitions and conceded by the parties, there was no duty on the part of defendants to give failproof information. There is merely established the existence of an employment relationship between plaintiff and defendant Board, the Board's ownership and custody of the steamer alleged to have caused plaintiff's injury, the attorney-client relationship between plaintiff and the attorney requesting the name of the equipment's manufacturer, reliance by the plaintiff on the information given, and the fact that the name furnished was incorrect. There are no facts set forth which would in our view impose upon the employer-equipment custodian a duty to plaintiff or her attorney to exercise the care in supplying correct information which ultimately proved lacking. There is no allegation that the purpose of requesting the information was communicated in detail sufficient to apprise defendants of the high degree of reliance which plaintiff and her attorney would place on it, nor is there alleged defendants' knowledge of the extent of reliance planned. It is not alleged that the information sought was within the defendants' exclusive knowledge or control, nor asserted that plaintiff or her attorney was prohibited or prevented from personally inspecting the equipment or otherwise personally determining the manufacturer thereof.
It cannot be presumed that Jones or the School Board knew or should have known that plaintiff's attorney would rely entirely upon the information furnished, make no independent investigation, forego discovery, fail to timely file against the proper defendant, and let prescription run. And the risk of plaintiff's having a law suit prescribe if information given was incorrect was not alleged to be one which defendants could reasonably have been required to appreciate. That risk was and should have been much more obvious to plaintiff and her attorney than to defendants.
With respect to plaintiff's good Samaritan and stipulation pour autri arguments the Court of Appeal did not err in its adverse *840 resolutions. The arguments are without merit.
The courts below were correct. The exception of no cause of action was properly maintained.

Decree
Accordingly, the judgment of the Court of Appeal is affirmed. All costs are assessed against relators.
AFFIRMED.
TATE, J., dissents and assigns reasons.
MARCUS, J., concurs.
DENNIS, J., dissents.
TATE, Justice, dissenting.
I respectfully dissent.
The majority holds that a school board, a public body, has no duty to ascertain that information is correct, which it furnishes to the attorney of its employee, even though the school board knows or should know that the attorney will rely upon the information furnished in order to file a suit.
The suit concerns the employee's injuries during the course of her employment with the school board, when a steamer exploded. The purpose of the letter was to ascertain the manufacturer of the malfunctioning equipment for purposes of suing such manufacturer in tort. The equipment itself, and all information concerning its purchase and the name of its manufacturer, was solely within the possession of the school board.
I doubt that a public body may refuse to furnish any citizen non-privileged information within its possession. Nevertheless, I would agree that probably no action for tort damages will lie if the public body fails to furnish such information.
However, once the public body has agreed to furnish such informationknowing that the other party will rely and act upon it, and may suffer substantial damage if the information is incorrect, then the public body should be liable for damages resulting from negligently furnished misinformation, under ordinary principles of Louisiana and Anglo-American negligence law.
The error in the majority's reasoning, in my opinion, is that it assumes, without analysis, that under the above-outlined circumstances there was no duty upon the school board (once it agreed to furnish the information to be relied upon) to give correct rather than incorrect information as to the name of the manufacturer.
Of course, if there was no duty, there is no liability. However, the very issue before us is whether there is a duty.
I respectfully suggest that a duty of reasonable care to furnish correct information (if any at all is furnished) is imposed upon a public agency under Civil Code Articles 2315 and 2316, whenknowing that such information will be relied upon by the employee furnished the information (to his detriment, if false)the public agency furnishes information within its exclusive knowledge, which information concerns a matter which occurred during the course of the inquirer's employment relationship with it.
In Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978), we recently discussed the basis of delictual liability in Louisiana. We there stated, 360 So.2d 1334 (footnotes omitted):
The standard of conduct required of persons in Louisiana in their relationships with one another is stated in simple, general terms set forth in Article 2315 of the Louisiana Civil Code of 1870:
"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it. "* * *."
This single article forms the basis of all tort liability in Louisiana. The remaining articles of the Civil Code's chapter of legal principles regulating offenses and quasi-offenses, Articles 2316 through 2324, contain amplifications as to what constitutes "fault" and under what circumstances a defendant may be held liable for his act or that of a person or thing for which he is responsible.

*841 Under the civilian tradition of our state the courts have been given a broad, general principle of legislative will from which they are required to determine when the interest of society is best served by requiring one who harms another to respond in damages for the injury caused. In deciding whether the conduct in a specific case falls below that in which a person can engage without becoming responsible for resultant damage, a court must refer first to the fountainhead of responsibility, Article 2315, and next in applying the article to the many other articles in our code which deal with the responsibility of certain persons or that which arises due to certain types of activity. After searching through the code itself a jurist should refer in turn to the acts of the legislature, local governments, and other legislative and administrative bodies. Then, having explored the legislative and administrative sources of standards of proper conduct, a court should turn next to the experience of the judiciary in the interpretation and application of these standards to actual situations.
In the present instance, fault liability under Article 2315 is sought to be imposed under the immediately succeeding "negligence"-fault provision, Article 2316: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." (As we will note later, in Louisiana the negligence concept is largely patterned upon the American experiencewant of due care under the circumstances, i. e., of the fact-situation within the contemporary social contextcommon to Louisiana and the other American states.)
Insofar as other legislative enactments are concerned, none directly provide as to fault. However, we may deduce (if we deduce anything relevant at all), that a public bureaucracy in a free society is the servant of the people and must open its files to all non-privileged information. See, e. g., the Public Records Act, La.R.S. 44:1-42, especially R.S. 1, 32, 33. Arguably, if the public agency furnishes the information (instead of requiring the inquiring citizen to ascertain himself its content in the public records), the agency must assure that the citizen receive correctly the information as reflected by its records, at least when it realizes or should realize that the citizen may act to his detriment if the information furnished is incorrect.
The public agency's liability in the instant case rests on a broader basis, however, than this statutory expression of a citizen's right to the correct information in the agency's files. Under ordinary negligence principles, Article 2316, the agency is liable for its negligently furnishing false information, when the information was furnished under circumstances from which the agency knew or should have known that the person acting upon the information would receive foreseeable harm if the information was false.
As we stated in Guilbeau v. Liberty Mutual Insurance Company, 338 So.2d 600, 602 (La.1978) (citations omitted): "Actionable negligence results from the creation or maintenance of an unreasonable risk of injury to others. * * * In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant * * *, but also the likelihood that harm may be caused * * *."
Under our private law, thus, every person is under a legal duty to avoid creating an unreasonable risk of foreseeable harm to any other person, and a public agency is no more exempt from that duty than is any private corporation or individual. If under the present circumstances the present defendant agency created an unreasonable risk of harm to the plaintiff, then it violated a legal duty owed to the plaintiff and, therefore, is responsible to her for damages thereby caused. Articles 2315, 2316.
The issue, of course, is whether the risk of harm created in the particular case before us was unreasonable, taking into consideration the usual indiciathe likelihood of harm to result from negligent misrepresentation, the magnitude of the risk created (the seriousness of the harm which may *842 result, for instance), the social utility values enhanced or eroded by the conduct (an undue burden upon the public agency in being careful with the information it dispenses, for instance, balanced against the social interest advanced in permitting a citizen to rely and act upon information furnished him by his government in the expectation he will act and rely upon it). See Restatement of Torts 2d, Sections 282, 284, 291, 292, 293 (1965).
Tested by all these normal criteria of negligence, the defendant agency created an unreasonable risk of harm to the plaintiff by its negligent misrepresentation under the circumstances shown, and the agency should be held liable for the damages which resulted as a consequence of its misrepresentation. It violated a duty imposed by Article 2316 upon it (and upon any other public or private person under similar circumstances) to use due care in furnishing information within its files, which the agency knew or should have known would be relied upon by the person receiving it, and which (if false) was likely to cause substantial harm to the person furnished it and relying upon it.[1]
As both parties note, the issue of liability for negligent misrepresentation has never before arisen in Louisiana. In this case of first impression, it is not inappropriate to look to the experience of other American jurisdictions that have previously considered the issue: The reasonable care due under the circumstances occurs in the same American context as it now arises in Louisiana, without any uniquely civilian or Louisiana legal precept involved.
The American Law Institute Restatement of Torts is an effort to codify and analyze the American experience in evolving both general rules of tort liability and particular rules for particular fact-situations. Section 552, Restatement of Torts 2d (1977) has attempted to distil a rule of liability for negligent misrepresentation from the decisions of the other American jurisdictions in which the issue has arisen.
The Section, entitled "Information Negligently Supplied for the Guidance of Others," provides:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*843 (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
In concluding that (if applicable in Louisiana) the principles set forth by this Restatement section do not justify the plaintiff's cause of action, our brethren of the intermediate court concluded that the defendant agency could not be liable because it had no "pecuniary interest" in the transaction. (It is not seriously disputed that all other requirements for liability under the Section are met.)
The comments to the Restatement section explain that the short-hand term "pecuniary interest" is to differentiate an actionable circumstance from one in which a purely gratuitous service is performed as a favor. Comment c. They further explain that the pecuniary interest may be not only a direct benefit but also of a more indirect character, and note "The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." Comment d.
I am simply unable to conclude that, even tested by the "pecuniary benefit" requirement as understood in its functional sense in the Restatement, a public body is absolved from any liability for false information which it furnishes in the course of the performance of its public function (which, it seems to me, includes permitting members of the public full access to non-privileged information in its files), when it realizes that the individual who receives the information may be damaged if this information proves to be incorrect.[2]
For instance, the Casualty and Surety Division of our Louisiana Insurance Rating Commission is required to furnish information to the public as to the liability coverage furnished by policies issued in Louisiana, and the mere fact that no fee is charged for this service (until recently) should not absolve this public agency from any damage caused by its negligence in furnishing false information of this nature sought from it by members of the public. No more should a lack of due care absolve the present public agency for its negligence in furnishing information as to the manufacturer of equipment maintained by it (information in its files only) sought for purposes of suing that manufacturer in tort for injuries sustained by a school board employee on school board premises.
The cause of action for negligent misrepresentation is discussed in Prosser on Torts, Section 107, pp. 704-710 (4th ed. 1971). With regard to the duty of ordinary care in furnishing information, Prosser states "* * * where the representation, although itself gratuitous, is made in the course of the defendant's business or professional relations, the duty is usually found" (p. 1706) and "[w]hen the representation is made directly to the plaintiff, in the course of his dealings with the defendant, or is exhibited to him by the defendant with knowledge that he intends to rely upon it . . ., there has been no difficulty in finding a duty of reasonable care" (p. 707).
The plaintiff cites to us a number of decisions from other American jurisdictions which have recognized an action for negligent misrepresentation under circumstances analogous to the present. Most of them are cited at 65 C.J.S. Negligence § 20 (1960). This encyclopedia notes that under most American authorities a false statement negligently *844 made may be the basis of a recovery of damages for loss sustained as a consequence of reliance thereupon. It further notes that this liability is generally limited by certain requirements, including a special relationship between the parties by reason of which the party furnished the information has the right to rely on the other for such information, and that the person giving the information should be chargeable with knowledge (a) that it is intended for a serious purpose, (b) that the other intends to rely and act on it, and (c) that if the information is erroneous the person acting upon it is likely to be injured by relying upon it.
I see no need in analyzing these other American decisions in detail. The principles evolved and applied by them are consistent with my view that in Louisiana an action for negligent misrepresentation is available under circumstances such as the present.
In the present case, Louisiana's Civil Code Article 2316, which provides for actionable fault by reason of negligence, should therefore be construed as requiring the exercise of reasonable care by a public agency, when it furnishes information within its exclusive possession to its employee in connection with injuries sustained by that employee in the course of his employment, and when the agency knows that this information will be relied upon by the employee in filing suit and that, if the information is false, the employee may lose valuable rights should suit be filed against the wrong defendant in reliance upon the incorrect information furnished him by the agency.
One last note: At the risk of overdramatizing the issue which has arisen in the present rather mundane litigation, one can glimpse the first faint shadowings of a problem which may increasingly occupy the attention of our judicial institutions during the remaining decades of this century and in the first decades of the century to come: How may we hold accountable the governmental bureaucracies in a mass society to an individual damaged by the carelessness or indifference of the bureaucracy in performing services for the citizenry that the individual served by his government may reasonably expect should be fulfilled so as not to cause unreasonable risk of harm to him?
Our political philosophy expressed by our federal and state constitutions is to protect the rights of individuals against misuse of governmental power. The social values expressed by our private law are to protect the rights and enforce the obligations of individuals. Conceding that my view somewhat exaggerates the social implications of the majority's decision, nevertheless in my opinion the majority decision slights these fundamental political and social values of our society, when we hold that a governmental agency is not responsible for harm caused by its careless misrepresentation in a reply to a serious inquiry from a citizen, under circumstances where the agency knows the information is sought for a serious purpose and that false information given the citizen is likely to (and does) cause serious harm to that citizen.
NOTES
[*] Chief Judge James E. Bolin participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] Section 552 of Restatement (Second) of Torts provides:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."
[1] The majority implies that the agency had no reason to believe that the attorney would rely upon the information furnished by it in filing suit, and it perhaps implies that the attorney should have gone over to the school board office to inspect its records or to inspect the actual defective equipment (assuming it was still existent). I simply cannot agree that an attorney cannot rely upon a formal communication from a public body, an agency which in a democratic society has a duty to the public with responsibility, for instance, to maintain records open to the public's inspection. The majority's implication imposes an unreasonable standard of duty upon an attorney in the conditions of our modern society, where of necessity the labors and duties of the various components of society are specialized and where we must not waste the talents and limited time (or increase their cost to the public) of an attorney or other citizen by expecting him not to rely upon information of apparent authenticity furnished him by a public agency in its reasonable expectation that he will act upon it to his detriment if false. I am simply unable to perceive any reason why, in the exercise of ordinary prudence, the attorney should doubt the veracity of such information or be required to investigate its reliability.
[2] I pretermit discussion of the school board's obvious pecuniary interest in furnishing the plaintiff the name of the tortfeasor, for the purpose of his suit, in which the school board may intervene to recover workmen's compensation benefits paid by it to the plaintiff arising out of the work-accident at issue. See La.R.S. 23:1101-1103. However, the obvious economic interest of the school board in facilitating its employee's tort recovery is an additional indicia upon which the plaintiff's attorney might rely in assuming that the information furnished him by the school board was reliable and had not been carelessly furnished with expectation that the attorney would verify it further.