**FRENCH MARKET PLAZA CORPORATION d/b/a Rizzo's Restaurant, John T. D'Antoni and Robert F. Morrow, Plaintiffs,**

v.

**SEQUOIA INSURANCE COMPANY and Excess Underwriters, Inc., Defendants.**

Civ. A. No. 77–1574.

United States District Court, E. D. Louisiana.

Nov. 27, 1979.

J. Paul Demarest, New Orleans, La., for plaintiff French Market Plaza.

Emile L. Turner, Jr., New Orleans, La., for plaintiff John T. D'Antoni.

Robert E. Peyton, Paul G. Preston, New Orleans, La., for defendants.

## ON MOTION FOR PARTIAL SUMMARY JUDGMENT

CASSIBRY, District Judge:

The motion for partial summary judgment filed by defendant Sequoia Insurance Company and Excess Underwriters, Inc. is DENIED, for the following reasons:

### INTRODUCTION

Plaintiff John D'Antoni brings this diversity suit arising out of a fire that severely damaged his shopping center and restaurant in 1976. He was insured by defendants, and he notified them of the loss. Plaintiffs [1] claim that defendants refused to fully pay the claim and, in addition, misrepresented terms of the policy and the benefits payable under them. As a result, when D'Antoni reopened the restaurant, he was unable to operate it successfully due to a lack of adequate capital. D'Antoni was eventually forced into bankruptcy. Plaintiffs' suit seeks payment of the full proceeds of the insurance policy, with interest and penalties, and alleges damages for D'Antoni's personal bankruptcy.

Defendants brought a summary judgment motion before this Court in January, 1979 on several grounds. I ultimately held that a suit on an insurance policy under Louisiana law alleges a breach of an obligation to pay money. *See* La. Civ. Code Ann. art. 1935 (West 1977). I also held that if the plaintiffs can prove actual fraud, D'Antoni can recover consequential damages for his personal bankruptcy. *French Market Plaza Corp. v. Sequoia Insurance Co.*, No. 77–1574 (*filed* March 26, 1979).

Plaintiffs amended their complaint to allege causes of action for actual fraud as well as for negligent misrepresentation. Defendants submitted the present motion challenging plaintiffs' right to maintain these causes of action. At a hearing held at a pre-trial conference, and at oral argument on this motion, I informed counsel that I would not reconsider my ruling that plain-

---

1. Robert F. Morrow, Jr., co-owner with D'Antoni of the shopping center, and French Market Plaza Corp., operator of the restaurant, are the other plaintiffs. All three plaintiffs were insureds under the policy issued by defendants.

tiffs can maintain the cause of action for actual fraud.

My original ruling required that more than "gross fault" as defined by the Louisiana Civil Code would have to be shown in order to sustain the cause of action for fraud. *See* La. Civ. Code Ann. art. 3556(13) (West 1953). I held that the plaintiff must establish that defendants engaged in a "design to obtain some unjust advantages." A cause of action based on negligence would be inconsistent with such a burden. At about the same time, however, the Louisiana Supreme Court decided *Devore v. Hobart Mfg. Co.*, 367 So. 2d 836 (La. 1979). *Devore* may affect plaintiffs' ability to maintain a cause of action for negligent misrepresentation.

## THE LOUISIANA LAW OF NEGLIGENT MISREPRESENTATION

Annie Devore, an employee of the Rapides Parish School Board, was injured when boiling water spewed out of a double steamer in a school kitchen. Her attorney wrote the school board requesting the name of the manufacturer of the steamer. The Director of the School Food Service wrote plaintiff's attorney and erroneously advised him that the name of the manufacturer was Cleveland Manufacturing Company. By the time plaintiff learned that the proper name of the manufacturer was the Cleveland Range Company, her suit against the manufacturer had prescribed under the appropriate state statute of limitations.

Plaintiff thereupon sued the school board in state court on a theory of negligent misrepresentation. She claimed that the board had a duty to supply her with the correct information and, having breached that duty, was liable for her damages. The Supreme Court of Louisiana upheld the rulings of the trial and appellate courts that Devore had failed to state a cause of action, but did establish that such a cause of action

for negligent misrepresentation exists under Louisiana law.

The supreme court started with the premise that Civil Code articles 2315 and 2316 provide a sufficient basis to support a cause of action for negligent misrepresentation. *Devore*, 367 So. 2d at 839; *see* La. Civ. Code Ann. arts. 2315, 2316 (West 1979).[2] Beyond that, the supreme court declined to "determine fully the extent to which and the conditions under which [Louisiana] law affords a cause of action for such a tort." 367 So. 2d at 839. The court nevertheless suggested some of the essential elements of the cause of action under Louisiana law.

The court alluded to the state court of appeal's ruling that plaintiff had not met the pecuniary interest test necessary to maintain a cause of action for negligent misrepresentation set forth in the Restatement (Second) of Torts. The relevant section provides in pertinent part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so

---

2. Article 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Ann. art. 2315 (West 1979). Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. Civ. Code Ann. art. 2316 (West 1979).

intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977).

The terms of the section provide that the duty not to misrepresent arises on the part of any person with a pecuniary interest who supplies information. The Louisiana Supreme Court apparently rejected this aspect of the Restatement, holding that Louisiana law requires that a defendant have an independent, affirmative legal duty to supply correct information. 367 So. 2d at 839; see Devore, 367 So. 2d at 840–44 (Tate, J., dissenting). The court held that neither the employer-employee relationship, nor the employer's position as custodian of the allegedly faulty equipment created such a legal duty.

While it is unclear whether the court intended to adopt the other terms of the Restatement, it did indicate additional deficiencies in plaintiff's complaint. Plaintiff failed to allege either that she had informed defendant of or that defendant independently knew of the degree of reliance she would place on the information. Plaintiff also did not allege that the information sought was within defendants' exclusive knowledge or control. Finally, it was not alleged that the risk of plaintiff's suit prescribing was one that defendants should have foreseen. Translated in the context of Devore's facts, these allegations appear to be the same elements of purposive communication and justifiable reliance, lack of contributory negligence, and foreseeable injury required by the terms of the Restatement.

### THE INSTANT CASE

Since the present case has been brought under the diversity jurisdiction of the Court, I must determine to what extent Louisiana law allows a cause of action for negligent misrepresentation in the insurance context. See Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). On the other hand, the plaintiffs are not bound by the restrictive rules of Louisiana code pleading. See La. Code Civ. Pro. Ann. art. 854 and Official Revision

Comments (West 1960). The Federal Rules, which generally govern procedure in the federal courts, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Brunswick Corp. v. Vineberg, 370 F.2d 605, 610 (5th Cir. 1967), require only that a plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). I find that plaintiffs have sufficiently alleged negligent misrepresentation on the part of defendants, if such a cause of action can be substantively maintained in this context.

At least one Louisiana court has already indicated that an action for misrepresentation of the extent of coverage under an insurance policy is appropriate under the terms of Civil Code article 2315. Gray & Company v. Ranger Insurance Company, 292 So. 2d 829 (La. App. 1974). In Gray, the plaintiff alleged that its insurance agent failed to obtain the coverage requested and misrepresented the extent of the coverage it did obtain. The court held that the alleged misrepresentation would be a breach of a legal obligation arising under Section 2315. The court did not indicate whether the cause of action for misrepresentation could be based on negligence. Due to the brevity of the Gray opinion and the subsequent issuance of Devore, I shall further discuss Louisiana law.

I find that defendants did have an affirmative duty to provide correct information under either the pecuniary interest test of the Restatement or the more restrictive "legal duty" test of Devore. It almost goes without saying that the two defendant insurance companies had a direct pecuniary interest in the particular business transaction that gave rise to this suit, i. e., settling plaintiffs' insurance claim. The companies' obligation to pay is governed by the terms of the insurance policy with the plaintiffs, the very terms they are alleged to have misrepresented. The Restatement test is easily satisfied.

I also find that Louisiana law independently creates a legal duty on the part of an insurance company to supply truthful infor-

mation to its assured. Section 1213 of the Louisiana Insurance Code prohibits any person from engaging in unfair methods of competition or unfair or deceptive acts or practices in the conduct of the business of insurance. La. Rev. Stat. Ann. § 22:1213 (West 1978). Section 1214 provides:

> The following are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> (1) Misrepresentations and false advertising of policy contracts. Making, issuing, or circulating, or causing to be made, issued, circulated, any estimate . . . or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby
>
> . . . .

La. Rev. Stat. Ann. § 22:1214 (West 1978). The code apparently contemplates that a negligent misrepresentation can be a violation, not just a willful misrepresentation. Section 1217 provides that the commissioner of insurance may, after hearing, issue an order to cease and desist from an unlawful method, act, or practice. La. Rev. Stat. Ann. § 22:1217 (West 1978). Section 1217 further provides that for violation of a cease and desist order, an offender shall pay up to $500.00 to the state, while a *willful* offender shall pay up to $5000.00. *Id.* The distinction must mean that some lesser standard of culpability than willfulness is punishable under the Insurance Code.

The primary purpose of Part XXVI of the Insurance Code is undoubtedly not to give a remedy for plaintiffs who have been injured by unlawful practices in the insurance business. The code recites that its purpose is to regulate the trade practices of the insurance business. La. Rev. Stat. Ann. § 22:1211 (West 1978). The only enforcement mechanism provided is placed in the hands of the commissioner of insurance, as described above. But the commissioner's powers offer little solace to an assured who has to depend on the cumbersome investigative and enforcement mechanism explicitly provided by the code. The code does not even provide a penalty for engaging in an unlawful practice until the commissioner conducts an investigation, determines there is reason to believe a violation has occurred, holds a hearing, issues a cease and desist order, *and then* proves to the court that the offender has violated the cease and desist order. *See* La. Rev. Stat. Ann. §§ 1215–17 (West 1978).

■ Under general principles of Louisiana law, a person who signs a written instrument is presumed to know the terms of the instrument. *See, e. g., Bud Finance Co. v. Gilard*, 330 So. 2d 622 (La. App. 1976). But such a general presumption cannot be construed as a license for an insurance company to be careless in dealing with its clients given the strong terms of the Insurance Code. Insurance policies are complex documents, often phrased in language incomprehensible to the layman. The insurance policy involved in this case comprises 47 pages and contains 26 separate forms, including at least 17 special endorsements. Each endorsement qualifies some other provision or form in the policy and then somewhat ironically recites, "All other terms and conditions remain unchanged." The layman *must* depend on the representations of his or her insurance agent or adjuster, even if counsel has participated in the transaction.

The policy in this case also provides for a total annual premium of $4,078.48. The plaintiffs were to be provided protection for their properties for certain risks up to $300,000.00, and in one case $350,000.00. The penalty of $500.00 assessed if an insurer negligently misrepresents the terms or benefits under a policy in violation of the commissioner's cease and desist order pales in comparison with the injury such a misrepresentation could cause when such high stakes are involved. Moreover, since any penalty assessed by the court goes to the state, a policyholder has less incentive to report a violation, if indeed it is ever discovered. If a policyholder does file a private suit for damages, proving actual intent to defraud under existing law is an almost impossible burden to bear.

For all of these reasons, it seems inescapable that the Louisiana legislature did not intend to make action by the commissioner of insurance the sole remedy for a violation of Section 1213. The Insurance Code defines the obligation of an insurer in terms of such magnitude as to describe a legal duty to provide truthful, accurate information to policyholders beyond whatever action the commissioner is empowered to take. That legal duty can be the basis of a cause of action for negligent misrepresentation under *Devore*.

The burden is on the plaintiffs to show that this case meets the other requirements of the Restatement and *Devore*. The plaintiffs must show that the representations made by defendants in adjusting the claim were furnished for their guidance, and that they relied on them justifiably. With regard to the latter inquiry, the defendants may show that the plaintiffs were contributorily negligent, barring recovery. *See* Restatement (Second) of Torts § 552A (1977). Plaintiffs must also show that the risk of D'Antoni's bankruptcy was one that defendants should have foreseen.