653 So.2d 69 (1995)
Charles A. HEMMANS
v.
STATE FARM INSURANCE COMPANY, Robert West, Carl W. Mixon, G. Michael Cohen and Guy Barr.
No. 94-CA-0496.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1995.
Rehearing Denied April 10, 1995.
Writ Denied June 23, 1995.
*70 Robert K. McCalla, Mark N. Mallery, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, and Anthony M. Dileo, Wayne J. Lee, Steven W. Usdin, Michael D. Landry, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, for appellants.
Herbert B. Bowers, III, Dale C. Wilks, Bowers & Bowers, New Orleans, for appellee.
Dorinda C. Bordlee, Metairie, for amici curiae.
Before BYRNES, CIACCIO and LANDRIEU, JJ.
CIACCIO, Judge.
This is an appeal of a jury verdict rendered in favor of plaintiff, Charles A. Hemmans and against State Farm Mutual Insurance Company and certain individual defendants. The trial court rendered judgment adopting the jury verdict, and defendants' motion for judgment notwithstanding the verdict or new trial was denied. Defendants now appeal from this judgment on the basis of several assignments of error. For the reasons stated more fully herein, we vacate the jury verdict and render judgment in favor *71 of defendants, dismissing plaintiffs suit against them.

FACTS AND PROCEDURAL HISTORY
Charles Hemmans is a State Farm Mutual Insurance Company agent in New Orleans. He has been an agent pursuant to a "State Farm Agent's Agreement" since November 1, 1985, having for two years prior to this date been classified as a trainee. Under the terms of this agreement, the agent is limited to soliciting and writing policies solely and exclusively for State Farm. The contract styles Hemmans' status as an independent contractor with control of his own daily activities and the manner in which he solicits business. Based on his agreement with State Farm, Charles Hemmans leased an office at 4640 Carrollton Avenue in New Orleans from which he conducts his insurance business.
In September of 1990, Robert G. West, the Regional Vice-President of State Farm for the Mid-South Region, of which Hemmans was a member, adopted additional underwriting rules in response to severe automobile underwriting losses experienced by State Farm. Included in these rules was an "added cars only program" or "loss control program" which provides that State Farm would not accept new customer automobile policies from agents who were identified as high loss agents. To enact this program, the company adopted four criteria for determining which agents would be considered high loss agents and placed on the program. Included in the criteria was the amount of losses incurred by the agent's policyholders and the frequency of their accidents. When the program was adopted in 1990, seventy out of the 800 agents in the mid-south region met the criteria and were placed on the program for some length of time.
Charles Hemmans was one of the agents who met these criteria. He was placed on the program effective October 15, 1990 by letter dated November 9, 1990 from Michael Cohen, Agency Director of State Farm. Under the terms of this program, Hemmans was restricted to writing automobile insurance for cars of existing policyholders only, in addition to writing new policies for life, health and fire insurance. According to this program, Hemmans could not bind automobile insurance for individuals who did not currently hold some type of State Farm insurance. Hemmans complied with the restrictions and was removed from the program one year later, in October of 1991.
On April 30, 1991, Hemmans filed a Petition for Declaratory Judgment and Damages against State Farm Insurance Company and certain State Farm officers, Robert West, Carl Mixon, G. Michael Cohen and Guy Barr, seeking a declaration that the "added car only program" was in violation of the State Farm Agent's Agreement and the rights of plaintiff as an independent contractor under the agreement. Hemmans, who is African-American, also contended that implementation of the program was racially discriminatory in that business which Hemmans was unable to write was sent to white State Farm agents who were not on the program. In his petition, Hemmans alleged that State Farm was liable for breach of contract, bad faith conduct, and certain negligent and intentional torts, including negligent misrepresentation, defamation and intentional interference with a contract. Hemmans sought damages for loss of business opportunity, loss of income, damage to his reputation and for professional embarrassment.
On the same date the petition was filed, April 30, 1991, Hemmans filed an ex parte motion to transfer and consolidate his lawsuit with the action entitled Ben Guillory v. State Farm Insurance Company, et al., alleging that the Guillory suit which was previously pending involved identical issues as those presented in the suit filed by Hemmans. The trial court granted this motion on April 30, 1991 and transferred and consolidated the two lawsuits into one section of court.
State Farm subsequently answered Hemmans' petition, denying Hemmans' claims and further asserting several defenses. State Farm also filed an opposition to the order of consolidation of the Hemmans suit with the Ben Guillory suit and requested a contradictory hearing on this issue. The order of consolidation was subsequently recalled pending this hearing. Following the hearing, the two lawsuits were again consolidated and the matter proceeded to trial. *72 The Hemmans and Guillory suits were tried before a jury from August 23, 1993 through September 30, 1993.
Although the suits were consolidated for trial, different sets of interrogatories were given to the jury at the conclusion of trial for each plaintiff. In the Charles Hemmans case, the jury interrogatories and responses provided as follows:
 INTERROGATORY NO. 1
 1(a) Did Charles Hemmans prove by a preponderance of the evidence that State Farm
Insurance Company by placing him on a loss control program intentionally discriminated against
him because of his race?
 YES _______________ NO X 
 INTERROGATORY NO. 2
2. Did Charles Hemmans prove by a preponderance of the evidence that his relationship with
State Farm Insurance Company was that of an employee?
 YES X NO _______________
 INTERROGATORY NO. 3
3(a). Did Charles Hemmans prove by a preponderance of the evidence that State Farm
Insurance Company breached his agency contract by placing him on a loss control program?
 YES X NO _______________
3(b). Did Charles Hemmans prove by a preponderance of the evidence that the breach of his
agency contract by State Farm Insurance Company was in bad faith?
 YES _______________ NO X 
3(c). Did Charles Hemmans prove by a preponderance of the evidence that Robert West or
Guy Barr as corporate officers of State Farm Insurance Company intentionally interfered with
his agency contract with State Farm Insurance Company?
 1) Robert West YES X NO _______________
 2) Guy Barr YES X NO _______________
3(d). Did Charles Hemmans prove by a preponderance of the evidence that State Farm
Insurance Company abused its rights under the agency contract when it placed him on a loss
control program?
 YES X NO _______________
 INTERROGATORY NO. 4
4(a). Did Charles Hemmans prove by a preponderance of the evidence that negligent representations
were made to him concerning the agency contract with State Farm Insurance Company
and that he relied on such negligent representations to his detriment in entering into the agency
contract?
 YES X NO _______________
4(b). Did Charles Hemmans prove by a preponderance of the evidence that Robert West, Guy
Barr, Michael Cohen or Carl Mixon made negligent representations on which he relied to his
detriment in entering into the agency contract?
 1) Robert West YES X NO _______________
*73
 2) Guy Barr YES X NO _______________
 3) Michael Cohen YES _______________ NO X 
 4) Carl Mixon YES X NO _______________
 INTERROGATORY NO. 5
5. Did Charles Hemmans prove by a preponderance of the evidence that he was defamed by
State Farm Insurance Company, Robert West, Guy Barr, Michael Cohen or Carl Mixon?
 1) State Farm Insurance Company YES _______________ NO X 
 2) Robert West YES _______________ NO X 
 3) Guy Barr YES _______________ NO X 
 4) Michael Cohen YES _______________ NO X 
 5) Carl Mixon YES _______________ NO X 
 INTERROGATORY NO. 6.
 6(a). Did Charles Hemmans prove by a preponderance of the evidence that he suffered
damages?
 YES X NO _______________
6(b). In terms of dollars, what were the damages Charles Hemmans proved by a preponderance
of the evidence that he suffered?
 1) Mental anguish, loss of esteem, embarrassment, humiliation and loss or damage to
 professional and community reputation.
 $100,000.00 
 2) Loss of income for the years 1991, 1992, 1993, and 1994.
 $100,000.00 
On November 12, 1993, the trial court signed a judgment adopting the jury's verdict, and rendering judgment in favor of Charles Hemmans and against State Farm, Robert West, Guy Barr and Carl Mixon, in solido, in the sum of $200,000.00. Defendants' motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, was denied by judgment rendered December 27, 1993. Defendants then filed this suspensive appeal.

DISCUSSION
On appeal, State Farm and the individual defendants assert numerous assignments of error which may be summarized as follows:
1) The jury erred in finding State Farm's actions in placing Hemmans on the loss control program constituted a breach of contract.
2) The jury erred in finding plaintiff was an employee of State Farm.
3) The jury erred in finding that Robert West and Guy Barr intentionally interfered with plaintiff's contract by placing him on the program.
4) The jury erred in finding State Farm abused its rights under the contract.
5) The jury erred in finding that defendants West, Barr and Mixon made negligent mispresentations to plaintiff which he relied on to his detriment.
6) The jury's damage awards are erroneous and should be reversed or reduced.
7) The trial court committed reversible error in consolidating plaintiff's suit with the Ben Guillory suit.
We will discuss each of these issues in the order that they were presented by State Farm.

*74 Breach of Contract

Plaintiff contends that the loss control program as adopted by State Farm in 1990 violated the agent's agreement he maintained with State Farm because it restricted his right to solicit automobile insurance. Although plaintiff concedes that the contract gives State Farm the right to set rules for the binding and acceptance of risks, plaintiff contends that the authority to impose the loss control program was not present in the contract between the parties and that the terms of the program materially altered the substance of the contract to his detriment. Following trial, the jury concluded that State Farm breached the terms of the contract by imposing the program on plaintiff.
On appeal, State Farm contends that the terms of the contract allowed the adoption and imposition of the loss control program in an effort to limit its risks and control its losses. They argue that the jury erred in Isfinding that the contract had been breached. We agree.
Contracts are the law between the parties. McCrory v. Terminix Service Co., 609 So.2d 883, 886 (La.App. 4th Cir.1992). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.C.C. Art. 2046. Interpretations of a contract are legal questions. Horton v. Mobley, 578 So.2d 977, 982-83 (La.App. 2nd Cir.1991), writ denied, 582 So.2d 1310 (La.1991). Whether a contract is ambiguous or not is a question of law. Usner v. Strobach, 591 So.2d 713, 728 (La.App. 1st Cir.1991), writ denied 592 So.2d 1289 (La.1992).
The State Farm Agent's Agreement entered into by the parties in this case contains the following provisions:
SECTION IMUTUAL CONDITIONS AND DUTIES
A. The Agent will solicit applications for insurance, collect initial premiums, membership fees and charges, countersign and deliver policies, reinstate and transfer insurance, assist policyholders and cooperate with adjusters in reporting and handling claims, avoid conflicts of interest, and cooperate with and advance the interests of the Companies, the agents, and the policyholders.
* * * * * *
L. We [State Farm] retain the right to prescribe all policy forms and provisions; premiums, fees, and charges for insurance; and rules governing the binding, acceptance, renewal, rejection, or cancellation of risks, and adjustment and payment of losses.
M. You [the Agent] will not represent yourself as having any powers except those authorized by this Agreement and subject to any applicable law. Without limiting the foregoing, you shall not have authority to extend the time of payment of any premium, or to alter, waive, or forfeit any of the Companies' rights, requirements, or conditions in any policy of insurance, or otherwise obligate the Companies in any way except as stated in this Agreement or expressly authorized under the rules and regulations of the Companies or as otherwise authorized in writing by the Companies.
The contract also contains the following language with regard to termination of the agreement:
A.... You [the Agent] or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address.
In addition to the above-cited pertinent provisions of the contract, we have reviewed the agent's agreement in its entirety, and although we find no specific reference to the possible adoption of a "loss control program," we find that adoption of such a program falls within the authority of State Farm under the contract. In Section I, Paragraph L, State Farm specifically retains the right to prescribe all rules governing the acceptance of all risks and the adjustment of losses. Paragraph M limits the agent's authority to obligate State Farm except as authorized in the *75 agreement or by the rules adopted by the Company.
Testimony at trial revealed that the loss control program which is the subject of this appeal was adopted in response to large losses on State Farm automobile policies during the 19-month period preceding the adoption of the program. Guy Barr, the deputy regional vice-president over the Mid-South Region, testified that in an effort to control these losses, the Company raised premiums, tightened underwriting procedures, strengthened the claims process and reduced expenses. The Company also looked to the agents to help slow the losses. Statistics showed that ninety percent of the 800 State Farm agents at the time were profitable, while ten percent of the agents were having severe losses. According to Barr, the loss control program was adopted in 1990 to give motivation to these high loss agents to reduce their losses. The record clearly shows that the program by which certain agents were restricted from writing insurance for new customer's automobiles was aimed directly at the acceptance of risks and the adjustment of losses, which falls within the authority of State Farm pursuant to Paragraph I(L) of the agent's agreement.
The record further shows that the program was based on objective criteria. Guy Barr also testified regarding the four criteria established to determine whether an agent would be placed on the loss control program, the first three measuring the agent's losses and the last factor measured how frequently an agent's policyholders caused accidents. These criteria were listed in the agent's experience report, which was published twice a year and discussed with each agent by their agency manager. The agent was only placed on the program when the report showed he or she met all criteria. Once the agent's losses returned to an acceptable level, the agent was removed from the program and had no restrictions on the type of insurance he or she could write for State Farm.
We find that according to the plain and ordinary terms of the contract, State Farm may place a restriction on the type and amount of insurance a given agent may sell in a given time period, where the purpose of the restriction is shown to be a reduction of losses for the Company. By the express terms of the contract, the agent had a duty to cooperate with and advance the interests of the Company and the policyholders. Section I, Paragraph A. We find that this duty encompasses cooperating with reasonable and objective programs which are adopted by the Company to ninsure that the Company operates on a profitable basis.
Our review of the State Farm Agent's Agreement leads us to the conclusion that State Farm is permitted by the terms of the contract to make rules governing the acceptance of risks and the adjustment of losses, and this language permits the adoption of the loss control program in this case. The terms of the contract are clear and unambiguous, and as a matter of law, we find that State Farm's actions in creating the loss control program fell within the ambit of its agreement with its agents. The jury's verdict which determines otherwise is clearly wrong and must be reversed.

Status as Employee or Independent Contractor
At trial, plaintiff argued, and the jury concluded, that State Farm's actions in placing him on the loss control program converted his status from an independent contractor to an employee.
Hemmans' Agent's Agreement with State Farm specifically identifies him as an independent contractor:
You are an independent contractor for all purposes. As such you have full control of your daily activities, with the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement.
This agreement which contractually establishes the relationship is the law between the parties. Although Hemmans admits that the intent of the parties was for the agent to be an independent contractor, he argues that that by placing him on the loss control program and restricting his opportunity to sell insurance pursuant to the agent's agreement, *76 State Farm converted his status to that of an employee.
The key issue in determining independent contractor status is control over the process of performing the work. Urbeso v. Bryan, 583 So.2d 114, 117 (La.App. 4th Cir. 1991). There is no dispute in the present case that prior to the adoption of the loss control program, Charles Hemmans had the right to exercise control over his own work.
Hemmans chose his own office location, and paid for all expenses for the maintenance of that office. He purchased all equipment necessary for his office, and paid all his own business expenses. He hired his own employees and determined and paid their salary. Hemmans hired his wife and daughters as office staff and determined their job duties and salaries. He decided when he worked each day, and for how long. He described the State Farm agency manager who had responsibility for his area as a "hands-off" manager, whom he saw approximately once every three months.
Further, the record shows that the State Farm agents are not paid wages, but are compensated on a commission basis. They do not participate in a pension plan. State Farm does not provide workers' compensation for its agent. It does not deduct social security taxes or federal or state taxes from the commission income of the agents. In addition, the IRS has determined that State Farm agents are independent contractors.
These factors clearly demonstrate that Hemmans' status with State Farm was that of an independent contractor with control of his own work performance, rather than that of an employee. The requirement that Hemmans participate in the loss control program for a specified length of time did not constitute the level of control required to make Hemmans an employee of State Farm. Requiring a contractor to comply with the owner's rules "does not signify the requisite right of operational control necessary to vitiate the independent contractor relationship." Davenport v. Amax Nickel., 569 So.2d 23, 28 (La.App. 4th Cir.1990), writ denied, 572 So.2d 68 (La.1991). See also, Humberto Morales v. Davis Brothers Construction Company, Inc., 647 So.2d 1302 (La.App. 4th Cir.1994).
The contract executed between the parties and their subsequent activities clearly indicate that Hemmans was an independent contractor with substantial control over his work performance, and his placement on the loss control program for a one year period did not change the independent contractor relationship between Hemmans and State Farm. Except for placing Hemmans on the loss control program for one year, State Farm did nothing to exercise control over the activities of Hemmans or his employees nor did State Farm interfere with the operations of his agency.
If placing Hemmans on the loss control program had been a breach of his agency contract, Hemmans would have had a cause of action for damages because of the breach. But a breach of contract, in the absence of assumption of control, does not change the relationship of the parties. Under the undisputed facts of this case we find that the placement of Hemmans on the loss control program did not change his status from independent contractor to employee. Accordingly, we find, as a matter of law, that the jury was clearly wrong in finding that Hemmans had become an employee of State Farm.

Intentional Interference with the Contract
The jury concluded that two of State Farm's corporate officers, Robert West and Guy Barr, intentionally interfered with the contract between State Farm and Charles Hemmans. On appeal, State Farm contends that as these officers were acting within the scope of their authority with State Farm, the officers cannot be held liable based on an interference with contract theory.
The Louisiana Supreme Court has recognized the duty of a corporate officer to refrain from intentional and unjustified interference with the contractual relation between his employer and the third person. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La.1989). However, this duty is limited, and a corporate officer cannot be held liable for intentional interference "if he acted within the scope of his corporate authority and in the reasonable belief that his action was for *77 the benefit of the corporation." Id., 538 So.2d at 231. An action against a corporate officer under this theory may be divided into separate elements:
(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation;
(2) the corporate officer's knowledge of the contract;
(3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome;
(4) absence of justification on the part of the officer;
(5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer. Id., 538 So.2d at 234.
Applying these legal precepts to the case before us, we find that one element of this cause of action must necessarily be a finding of a breach of the contract, which we have concluded did not occur in this case. As State Farm did not breach its contract with Hemmans, it follows that West and Barr cannot be held liable for intentionally causing the breach. The verdict of the jury is therefore erroneous on this basis.
Further, there is ample evidence in the record that Robert West and Guy Barr as corporate officers of State Farm were acting within the scope of their corporate authority in their adoption and application of the loss control program. Guy Barr testified at trial that he and Robert West had met in early 1990 to discuss methods to solve the problems of large losses on State Farm's automobile policies. He testified that the president of the corporation sanctioned their efforts to try to control the losses that were being experienced in their region. We have found no evidence in the record, nor has plaintiff indicated such, to support a finding that West or Barr acted outside the corporate authority in adopting this program.
Under these circumstances, where plaintiff failed to prove that the corporate officers acted outside of their corporate authority or in a manner they knew to be detrimental to the corporate interest, plaintiffs claims for interference with contractual relations against these officers is not actionable. The jury was clearly wrong in concluding otherwise.

Abuse of Rights
Plaintiff argues, and the jury concluded that State Farm abused its rights when it placed him on the loss control program. This cause of action arises where the otherwise permissible exercise of a legal right is transformed by certain actions of a party into an abuse of that right. The doctrine was most recently applied by a Louisiana court in Morse v. J. Ray McDermott & Co., 344 So.2d 1353, 1369 (La.1976), wherein the court found that an employer, by declining without serious or legitimate interest, to pay an employee the remaining portions of the employee's compensation by terminating him without cause, had abused its rights. However, the doctrine has been applied only in limited circumstances, and since the decision in Morse, the doctrine has not been applied again by Louisiana courts.
Historically, the abuse of rights doctrine has been applied in civil jurisdictions only when one of the following conditions is met:
1) if the predominant motive for it was to cause harm;
2) if there was no serious or legitimate motive for exercise of the right;
3) if the exercise of the right is against
moral rules, good faith, or elementary fairness;
4) if the right is exercised for a purpose other than which it is granted.
Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965 (1975); Truschinger v. Pak, 513 So.2d 1151, 1154 (La.1987).
In the present case, we can find no evidence in the record to support a finding of abuse of rights by State Farm. As previously stated, State Farm certainly possessed the legal right under the contract with its agents to adopt rules governing the acceptance and binding of risks as well as the adjustment of losses. The record is clear that State Farm adopted the loss control program for a serious and legitimate motive: to address severe *78 losses in its automobile policies. There is no evidence that State Farm imposed the program on Charles Hemmans to cause him harm; rather the record shows that State Farm desired Hemmans' agency to be a profitable one for the benefit of both Hemmans and State Farm. In fact, State Farm imposed the program when the contract provided them with the option of terminating Hemmans as an agent without cause. In addition, the record shows that approximately seventy agents were placed on the program at the same time and for the same reasons as Hemmans.
Further, the record indicates that adoption of a program such as the one in this case was a common solution to the problem of adjusting losses; Inthere has been no showing that imposition of the program is against moral rules or elementary fairness or that it was imposed for any reason other than to control losses.
Our review of the record reveals no basis for a finding that State Farm abused its rights under the agent's agreement. Accordingly, we conclude that the jury's determination on this issue is manifestly erroneous.

Negligent Misrepresentations
Plaintiff contends that State Farm's failure, specifically the failure of defendants West, Barr and Mixon, to advise him of the possibility that restrictive programs would be imposed was a negligent misrepresentation on which plaintiff relied to his detriment. The jury found that defendants West, Barr and Mixon made negligent misrepresentations to plaintiff by failing to inform him that State Farm claimed the right to restrict the writing of insurance by adopting the loss control program.
Our Supreme Court has recognized that the Civil Code affords a broad ambit of protection for persons damaged by the acts of others sufficient to encompass a cause of action for negligent misrepresentation. Deyore v. Hobard Mfg. Co., 367 So.2d 836, 839 (La.1979). In order for the doctrine of negligent misrepresentation to apply, there must be a duty owed on the part of the defendant to supply correct information; there must be a breach of that duty; and, the breach of the duty owed must have caused damage to plaintiff. Beal v. Lamas and Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982); Cypress Oilfield Contractors v. McGoldrick Oil Co., Inc., 525 So.2d 1157 (La.App. 3rd Cir.), writ denied, 530 So.2d 570 (La.1988).
Plaintiff contends that it was not incorrect information that he was given by State Farm; it was a lack of information. He argues that had he known prior to the signing of the agent's agreement that State Farm believed it had the right under the agreement to impose restrictive programs, he likely would not have entered into the contract.
State Farm's liability for plaintiff's claims must be ascertained by application of the duty-risk analysis. Whether a duty exists is a question of law. Cypress Oilfield Contractors, supra. The question presented here is whether State Farm, as a party to the agent's agreement, had a duty to inform the agent prior to execution of the contract of the possibility that restrictive programs would be imposed.
First, we note that plaintiff is not contending that State Farm supplied incorrect or false information regarding the possibility that restrictive programs would be adopted. Plaintiff contends that State Farm had a duty, beyond what was present in the contract, to inform him of this possibility.
The State Farm Agent's Agreement clearly provides that State Farm has the right to prescribe all rules governing the acceptance and binding of risks, as well as the adjustment of losses. We find that the language in the contract included the authority of State Farm to adopt a reasonable and objective program such as the one in this case which attempted to control losses. There is nothing in the contract which provides that the agent has unrestricted license to write any amount of insurance for State Farm. The Agreement states in the preamble as follows:
It is to our mutual interest to ... maintain the Companies' operations on a profitable basis in order to assure the necessary financial strength to protect the policyholders' interests.
*79 We find no duty on the part of State Farm to specify either in the contract or orally all methods by which the operations of the Company will be maintained on a profitable basis. State Farm had the authority under the contract to adopt rules, including the rules governing the loss control program, to insure profitability of the Company to protect the interests of the policyholders. Hemmans agreed to the contract, and cannot now complain that he was not aware of its terms because of State Farm's failure to adequately explain them.
In addition, the cause of action for negligent misrepresentation requires that plaintiff rely on these misrepresentations to his detriment. The record in the present case indicates that plaintiff's income rose substantially after he became a State Farm agent, and continued to rise while he was on the loss control program. We find that plaintiff failed to proved that he suffered detriment as a result of executing the contract with State Farm.
Accordingly, for the reasons stated, we conclude that as a matter of law, defendants West, Barr and Mixon are not liable to plaintiff on a theory of negligent misrepresentation.

Damages
State Farm next argues on appeal that the damage award rendered by the jury is not supported by the record. However, as we find no basis for liability on the part of State Farm, we need not reach the issue of the amount of damages awarded in this case.

Consolidation
Finally, State Farm contends that the order of the trial court consolidating the Hemmans case with the suit entitled Ben Guillory v. State Farm, et al. was improper and prejudicial.
A trial court is vested with the authority to consolidate separate suits involving a common issue of fact or law pending in the same court. La.C.C.P. art. 1561. In the present case, the trial court signed plaintiff's ex parte motion for consolidation, but subsequently vacated this order and set the matter for contradictory hearing. Following the hearing, the trial court consolidated the Hemmans and Guillory suits into one section of the court.
These two suits have many common issues. Both plaintiffs were State Farm agents in the New Orleans area who were challenging the "added car only program" or "loss control program" adopted by State Farm in 1990. Both plaintiffs were black and contended that the imposition of the programs on them was racially discriminatory. Both suits contained the same allegations of negligent and intentional torts. Although the Guillory suit contained somewhat broader allegations than those contained in the Hemmans suit, and the individually named defendants were slightly different, both lawsuits rested on the same set of facts and occurrences.
Under the circumstances presented here, we conclude that consolidation was the most efficient method of handling these matters. We fail to find that State Farm was prejudiced by having one trial. In fact, from the responses to the jury interrogatories, it is evident that the jury distinguished between the two suits. Considering the length of the trial and the extensive testimony and documentation involved, it would have been a tremendous waste of time, effort and expense of both the parties and the courts to have separate trials. We find the consolidation of these two suits to have been proper, and we find no merit in State Farm's argument.

CONCLUSION
Accordingly, for the reasons assigned, we find that the jury verdict finding liability on the part of State Farm and the individual defendants to be manifestly erroneous. We therefore reverse the jury verdict and the judgment of the trial court adopting the verdict and enter judgment in favor of State Farm Mutual Insurance Company, Robert West, Carl W. Mixon, G. Michael Cohen and Guy Barr, dismissing Charles A. Hemmans' suit against them, with prejudice and at his cost.
REVERSED AND VACATED.