662 So.2d 104 (1995)
Ben GUILLORY
v.
STATE FARM INSURANCE COMPANY, Robert West, Mel Daigrepont, G. Michael Cohen and Guy Barr.
No. 94-CA-1405.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Rehearing Denied November 8, 1995.
*106 Robert K. McCalla, Mark N. Mallery, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, and Anthony M. DiLeo, *107 Wayne J. Lee, Steven W. Usdin, Michael D. Landry, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Appellants.
Steven J. Lane, Russ M. Herman, Maury A. Herman, Herman, Herman, Katz & Cotlar, New Orleans, for Appellee.
Dorinda C. Bordlee, Metairie, for Amici Curiae.
Before BYRNES, CIACCIO, ARMSTRONG, WALTZER and LANDRIEU, JJ.
BYRNES, Judge.
This is an appeal of a jury verdict rendered in favor of plaintiff, Ben Guillory, and against State Farm Mutual Insurance Company and certain individual defendants. The trial court rendered judgment adopting the jury verdict, and defendants' motion for judgment notwithstanding the verdict or new trial was denied. Defendants now appeal from this judgment on the basis of several assignments of error. Plaintiff also answered the appeal, asserting several errors of the trial court.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Ben Guillory, is a State Farm Mutual Insurance Company agent in the New Orleans area. He has been an agent pursuant to a "State Farm Agent's Agreement" since October 1, 1980. Under the terms of this agreement, the agent is limited to soliciting and writing policies of automobile, life, fire and health insurance solely and exclusively for State Farm. The contract styles Guillory's status as an independent contractor with control of his own daily activities and the manner in which he solicits business. Guillory maintains an office from which he conducts his insurance business in eastern New Orleans.
In September of 1990, Robert G. West, the Regional Vice-President of State Farm for the Mid-South Region, of which Guillory was a member, adopted additional underwriting rules in response to severe automobile underwriting losses experienced by State Farm. Included in these rules was an "added cars only program" or "loss control program" which provided that State Farm would not accept new customer automobile policies from agents who were identified as having the highest amount of losses in their agencies. In 1991, the rules were amended to provide that agents who were placed on the program could submit new customer automobile policies on a non-bound basis only.
To enact this program, the company adopted four criteria for determining which agents would be considered high loss agents and placed on the program. Included in the criteria was the amount of losses incurred by the agent's policyholders and the frequency of their accidents. When the program was adopted in 1990, seventy out of the 800 agents in the mid-south region met the criteria and were placed on the program for some length of time. The criteria were listed for each agent on the agent's experience report which was published and discussed with the agent every six months.
Ben Guillory was one of the agents who met these criteria according to the information listed in his agent's experience report from January of 1990 through June of 1990. He was placed on the program effective October 4, 1990 by Mel Daigrepont, the Agency Manager for State Farm who was responsible for Guillory's agency. Under the terms of this program, Guillory was restricted to writing automobile insurance for cars of existing policyholders only, in addition to writing new policies for life, health and fire insurance. According to the 1990 program, Guillory could not bind automobile insurance for individuals who did not currently hold some type of State Farm insurance. In 1991, Guillory was permitted to submit non-bound applications for new automobile insurance to the Company.
Guillory challenged both the 1990 and 1991 programs and refused to comply with their terms. He continued to solicit and sell new automobile insurance, and he sent what he considered to be "clean" business to State Farm. In response, State Farm transferred these policies to other State Farm agents in the area and continued to instruct Guillory to comply with the program. State Farm threatened to terminate Guillory's agency *108 contract if he did not comply with the program. Guillory subsequently began cooperating with the program, and the policies which had been transferred to other agents as well as all back commissions were returned to Guillory.
On March 28, 1991, Guillory filed a Petition for Damages against State Farm Mutual Insurance Company and certain State Farm officers, namely, Robert West, Mel Daigrepont, G. Michael Cohen, Guy Barr and Bill Wilson. In his petition, plaintiff alleged that by its actions, State Farm was exercising control over his agency, in violation of the provision of the contract that Guillory was an independent contractor. Guillory, who is black, also alleged that State Farm's actions were racially discriminatory in that business which was transferred from Guillory's agency was sent to white State Farm agents who were not on the program. Guillory also alleged that State Farm's actions in placing him on the program and in administering the program were racially discriminatory.
In the petition, Guillory alleged that State Farm by its actions was liable for breach of contract, bad faith conduct, and certain negligent and intentional torts, including negligent misrepresentation/detrimental reliance, defamation, and intentional interference with a contract. Plaintiff further alleged that State Farm's actions constituted a violation of the unfair trade practices provisions of the Louisiana Insurance Code. Guillory sought damages for loss of business opportunity, loss of income, damage to his reputation, loss of public confidence and mental anguish, including humiliation.
On April 30, 1991, a lawsuit entitled Charles Hemmans v. State Farm, et al. was filed in Civil District Court and was consolidated with the Ben Guillory suit. State Farm subsequently answered Guillory's petition, denying his claims and further asserting several defenses. State Farm also filed an opposition to the order of consolidation of the Hemmans suit with the Guillory suit and requested a contradictory hearing on this issue. The order of consolidation was subsequently recalled pending that hearing. Following the hearing, the two lawsuits were again consolidated and the matter proceeded to trial. The Guillory and Hemmans suits were tried together before a jury from August 23, 1993 through September 30, 1993.
Although the suits were consolidated for trial, different sets of interrogatories were given to the jury at the conclusion of trial for each plaintiff. In the Ben Guillory case, the jury interrogatories and responses provided as follows:
 INTERROGATORY NO. 1[1]
1(a) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company by placing him on loss control programs intentionally discriminated against him
because of his race?
 YES _________ NO _________
(On this interrogatory the jury was deadlocked.)
1(b) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company in the manner in which it administered the loss control programs on which he was
placed intentionally discriminated against him because of his race?
 YES X NO _________
*109
 INTERROGATORY NO. 2
2. Did Ben Guillory prove by a preponderance of the evidence that his relationship with State
Farm Insurance Company was that of an employee?
 YES X NO _________
 INTERROGATORY NO. 3
3(a) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company breached his agency contract by placing him on loss control programs?
 YES X NO _________
3(b) Did Ben Guillory prove by a preponderance of the evidence that the breach of his
agency agreement by State Farm Insurance Company was in bad faith?
 YES X NO _________
3(c) Did Ben Guillory prove by a preponderance of the evidence that Robert West or Guy
Barr as corporate officers of State Farm Insurance Company intentionally interfered with his
agency contract with State Farm Insurance Company?
1) Robert West YES X NO _________
2) Guy Barr YES X NO _________
3(d) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company abused its rights under the agency contract when it placed him on loss control
programs?
 YES X NO _________
3(e) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company breached his agency contract by the manner in which it administered the loss
control programs on which he was placed?
 YES X NO _________
3(f) Did Ben Guillory prove by a preponderance of the evidence that the breach of his agency
contract by State Farm Insurance Company was in bad faith?
 YES _________ NO X [2]
3(h) Did Ben Guillory prove by a preponderance of the evidence that State Farm Insurance
Company abused its rights under the agency contract by the manner in which it administered
the loss control program on which he was placed?
 YES _________ NO _________
*110
 INTERROGATORY NO. 4
4(a) Did Ben Guillory prove by a preponderance of the evidence that negligent representations
were made to him concerning the agency contract with State Farm Insurance Company
and that he relied on such negligent representations to his detriment in entering the agency
contract?
 YES X NO _________
4(b) Did Ben Guillory prove by a preponderance of the evidence that Robert West, Guy Barr,
Michael Cohen, Bill Wilson or Melvin Daigrepont made negligent representations on which he
relied to his detriment in entering the agency contract?
1) Robert West YES X NO _________
2) Guy Barr YES X NO _________
3) Michael Cohen YES X NO _________
4) Bill Wilson YES _________ NO X 
5) Melvin Daigrepont YES X NO __________
 INTERROGATORY NO. 5
5. Did Ben Guillory prove by a preponderance of the evidence that he was defamed by State
Farm Insurance Company, Robert West, Guy Barr, Michael Cohen, Bill Wilson or Melviri
Daigrepont?
1) State Farm Insurance Company YES X NO _________
2) Robert West YES X NO _________
3) Guy Barr YES X NO _________
4) Michael Cohen YES X NO _________
5) Bill Wilson YES _________ NO X 
6) Melvin Daigrepont YES X NO _________
 INTERROGATORY NO. 6
6(a) Did Ben Guillory prove by a preponderance of the evidence that he suffered damages?
 YES X NO _________
6(b) In terms of dollars, what were the damages Ben Guillory proved by a preponderance of
the evidence that he suffered?
1) Mental anguish, loss of esteem, embarrassment, humiliation and
 loss or damage to professional and community reputation.
 $350,000.00
*111
2) Cost of therapy $ 4,000.00
3) Loss of income for the years 1991, 1992, 1993 and 1994. $150,000.00
On November 12, 1993, the trial court signed a judgment adopting the jury's verdict, and rendering judgment in favor of Ben Guillory and against State Farm, Robert West, Guy Barr, Michael Cohen and Melvin Daigrepont, in solido, in the sum of $504,000.00. The trial court further rendered judgment in favor of Ben Guillory and against State Farm and the individual defendants in the amount of $250,000.00, which the parties stipulated to be the reasonable attorney's fees, costs and interest on the judgment rendered. The trial court subsequently amended the verdict to provide that the November 12, 1993 judgment incorrectly listed the response to Interrogatory No. 3(f) to be YES when the jury's actual answer to this interrogatory was NO. Defendants' motion for judgment notwithstanding the verdict, or in the alternative, new trial, was denied by judgment rendered December 27, 1993. Defendants now suspensively appeal from this judgment. Plaintiff has timely answered the appeal.

DISCUSSION
On appeal, State Farm and the individual defendants assert numerous assignments of error which may be summarized as follows:
1) The jury erred in its finding that State Farm breached the agency agreement with Guillory by placing him on the program and in the method of administering the program.
2) The jury erred in finding plaintiff was an employee of State Farm.
3) The jury erred in finding that State Farm intentionally discriminated against Guillory because of his race in the manner of administering the loss control programs.
4) The jury erred in finding that Robert West and Guy Barr intentionally interfered with plaintiff's contract by placing him on the program and in the manner of administering the program.
5) The jury erred in finding that State Farm abused its rights under the contract.
6) The jury erred in finding that defendants West, Barr, Cohen, and Daigrepont made negligent misrepresentations to plaintiff which he relied on to his detriment.
7) The jury erred in finding that defendants State Farm, West, Barr, Cohen and Daigrepont defamed plaintiff.
8) The jury's damage awards are erroneous and should be reversed or reduced.
9) The trial court committed reversible error in consolidating the Charles Hemmans suit with the Ben Guillory suit.
Plaintiff answered the appeal of State Farm, and specified the following errors of the trial court:
1) The trial court erred by excluding evidence and failing to give the jury an interrogatory regarding damages for plaintiff's causes of action for bad faith breach of contract and bad faith anticipatory breach of contract, and by failing to instruct the jury on bad faith anticipatory breach of contract.
2) The trial court erred by failing to instruct the jury or give an interrogatory to assess damages for plaintiff's cause of action for unfair trade practices.
3) The award of damages by the jury is inadequate and should be increased in conformity with the evidence.

DEFAMATION
State Farm assigns as error the jury's determination that Ben Guillory was defamed by State Farm, West, Barr, Cohen and Daigrepont. Guillory contends that he was defamed by these defendants in several ways: by being placed on the loss control program, by a publication which stated that the loss control program applies to agents with the "most serious loss problems," by a statement *112 made in a meeting in which Michael Cohen referred to Guillory as "illiterate" in the presence of his secretary, Henrietta Porter, and by transferring policies written while on the program and informing the policyholders of Guillory's status on the loss control program.
Defamation is an invasion of a person's interest in his reputation and good name. Sassone v. Elder, 626 So.2d 345, 350 (La.1993). To maintain an action for defamation under Louisiana law, a plaintiff must prove: (a) defamatory words; (b) publication; (c) falsity; (d) malice, actual or implied; and (e) resulting injury. Sassone, supra; Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196, 198 (La.1980).
The act of placing Guillory on the loss control program cannot form the basis for a claim for defamation. See, Hicks v. Stone, 425 So.2d 807, 813 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La.1983). Further, the publication which plaintiff refers to as defamatory does not refer specifically to plaintiff, but rather to State Farm agents in general with the most serious loss problems. Plaintiff has not shown this publication to be false or contain defamatory words, and we fail to find the document constitutes defamation of plaintiff.
Guillory also complains that defendants defamed him in the presence of his secretary, Henrietta Porter, when Michael Cohen referred to Guillory during a meeting as "illiterate." This statement was allegedly made during a meeting when Cohen and Daigrepont were attempting to encourage Guillory to understand and abide by the terms of the loss control program. Daigrepont has denied hearing Cohen make this remark. Henrietta Porter, who was present when the remark was allegedly made, testified that Cohen treated her and Guillory like they were illiterate. She did not testify that her opinion of Guillory had changed or was lessened because of this remark.
Considering the circumstances of this remark, we find that it did not constitute a defamatory statement. Casual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation. McGowen v. Prentice, 341 So.2d 55, 58 (La.App. 3rd Cir.1976).
Guillory also complains that he was defamed through defendants' actions in transferring policies of certain of his policyholders. Two of Guillory's policyholders testified at trial: Mary Jones and Sherry Chandler. Both testified that their policies had been transferred by State Farm to other agents. Mary Jones did not know why her policy had been transferred. Ms. Chandler testified she was informed that there was a problem with Guillory and that he could not write new policies. However, we fail to find that the act of transferring the policies constitutes defamation. Further, plaintiff has failed to prove that anything that was told to his policyholders concerning his status on the loss control program was untrue or that the conveying of such information caused him injury.
We have carefully reviewed the record in its entirety, and fail to find any evidence whatsoever which would support a finding that Ben Guillory was defamed by defendants. Rather, we find that as a matter of law, plaintiff has failed to prove any instances of actionable defamation. The jury was clearly wrong in finding defendants liable for defamation, and its finding must be reversed.

NEGLIGENT MISREPRESENTATION
In Hemmans, supra, we found that there was no basis in the record for a finding of negligent misrepresentation by the individual defendants named in that case, West, Barr, and Carl Mixon. Although Guillory's petition and the jury verdict named two additional defendants, Michael Cohen and Melvin Daigrepont, who were allegedly liable to Ben Guillory for negligently misrepresenting facts concerning the agent's agreement, we find our rationale in the Hemmans case to be applicable here. The record fails to support plaintiff's claims of negligent misrepresentation against any of the defendants, and the jury finding which held defendants West, Barr, Cohen, and Daigrepont liable under this theory is clearly wrong and must be reversed.
*113 As the jury findings on the questions of negligent misrepresentation and defamation were the only findings against any of the individual defendants, our reversal of those findings eliminates any basis for liability on the part of the individual defendants. They are entitled to be dismissed from this suit with prejudice.

DISCRIMINATION
Plaintiff alleged race discrimination under two Louisiana statutes, LSA-R.S. 51:2242 and LSA-R.S. 23:1006. In pertinent part, these statutes prohibit an employer from intentionally discriminating against an employee on the basis of the employee's race. However, LSA-R.S. 51:2242 only prohibits discrimination by an "employer," and does not apply to independent contractors. Broussard v. L.H. Bossier, Inc., 789 F.2d 1158, 1159-60 (5th Cir.1986). As we hold elsewhere in this opinion, Guillory's status with State Farm is clearly that of an independent contractor; therefore, LSA-R.S. 51:2242 has no application in this case.
LSA-R.S. 23:1006 applies to an insurer with respect to the appointment of agents, regardless of the character of the agent's employment. Subsection C of this statute provides in part:
C. It shall be unlawful discrimination in employment for an insurer to:
(1) Intentionally fail or refuse to appoint as an agent, hire, refer, discharge, or otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin; or
(2) Intentionally limit, segregate, or classify an employee or insurance agent in a way which would deprive an individual of employment opportunities, give a favor or advantage to one individual over another, or otherwise adversely or unfavorably affect the status of an employee or insurance agent because of race, color, religion, sex or national origin.
Plaintiff contends that State Farm intentionally discriminated against him because of his race by placing him on the loss control program and in the manner in which the program was administered. The jury failed to reach a conclusion with regard to the first contention, but concluded that State Farm, in the manner in which it administered the loss control programs, intentionally discriminated against Ben Guillory on the basis of his race.
The burden of proving intentional discrimination because of race rests with the plaintiff. The company does not have any burden of proving it did not discriminate. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).
Mr. Guillory's claim that he was the victim of discrimination was supported by credible evidence. There were two jury interrogatories dealing with this issue. The first such jury interrogatory asks whether State Farm intentionally discriminated against Guillory in placing him in the loss control program and the next interrogatory (which was numbered 1(b)) asks whether there was intentional racial discrimination against Guillory in the administration of the program. The jury could not reach a consensus with regard to the first interrogatory, but gave an affirmative answer to # 1(b). In view of the failure of the jury to reach a consensus on the first interrogatory which it, therefore, left unanswered, the defendants suggest that the jury failed to find that Guillory was placed on the program because of his race, and this is a final determination which has not been raised as an issue on appeal. Therefore, the defendants would prevent Guillory from now arguing "that white agents with high losses were not placed on the program, but were protected by State Farm."
A reasonable interpretation of the jury's answers to these two interrogatories is that they found nothing wrong with the creation of the loss control program by State Farm and nothing wrong with "placing" Mr. Guillory in it if State Farm concluded that he fit the parameters of the program. In other words, the jury could not say with certainty that there was no legitimate business purpose for the program. On the other hand, it is reasonable to infer that the jury felt that the program was "administered" in a discriminatory manner because State Farm intentionally *114 failed to place similarly situated white agents in the program because of race. "Administration" as the term is commonly understood would include the determination of which agents must participate in the program and which do not. Both the terms "placing" and "administration" are used in the jury instruction concerning discrimination and there is nothing in that instruction directing the jury to interpret those words in a special or limited way.
As an appellate court our initial review function is not to decide factual issues de novo. The standard of review is not whether this Court would have made a different finding had it been the finder of fact. The jury's determinations regarding the credibility of witnesses is entitled to great deference. Where a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). We may not substitute our own contrary view of the record for that of the factfinder simply because we may believe that our evaluations and inferences drawn from the record are as reasonable. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. If the jury's findings are reasonable in light of the record reviewed in its entirety, this Court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Weatherford v. Commercial Union Ins., 94-1793 (La. 2/20/1995), 650 So.2d 763.
In order to reverse a factfinder's determinations on the basis of manifest error, the court of appeal must satisfy a two-part test: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the findings of the trial court, and (2) the appellate court must also determine that the record establishes that the finding is clearly wrong. Weatherford.
Applying these standards to a review of the record in its entirety pursuant to the constitutional mandate to review facts of which we were reminded by Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La. 7/5/94), 639 So.2d 216, 221, this Court cannot say that the jury was manifestly erroneous in finding that State Farm discriminated against Mr. Guillory in the manner in which it administered the loss control program.
The defendants complain that the trial court failed to properly instruct the jury concerning what it took to prove discrimination relying on Texas Dept. of Community Affairs v. Burdine, supra, and St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This reliance is misplaced.
The jury instruction requested by defendants was not legally essential. It would not have prevented the jury from concluding as it obviously must have that race was a deciding factor in the way the program was run and in the way it affected Mr. Guillory. Defendants were not prejudiced by the failure to give the requested instruction.
Hicks, ___ U.S. at ___, 113 S.Ct. at 2752, states that the "plaintiff must prove `both that the reason was false, and that discrimination was the real reason' for the action." However, this statement must be viewed in the context of the Hicks criticism of the Burdine case for implying that if the plaintiff proves that the reason proffered by the employer for its action is false, that "alone is sufficient to compel judgment for the plaintiff." Hicks, ___ U.S. at ___, 113 S.Ct. at 2752. That is, the Hicks court did not hold that discrimination could not be proved without proving first that the "reason" was false. The Hicks court said only that proving the "reason" false is not sufficient in itself to prove plaintiff's claim of unlawful discrimination. Discrimination must also be proved. The Hicks case and that portion of Burdine which was not called into question by Hicks indicates that proving the "reason" false in not a necessary precondition to proving discrimination. It is just a powerful, but rebuttable indication of discrimination. Discrimination may be adequately *115 proved in other ways. "Surely a more reasonable reading is that proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination." Hicks, ___ U.S. at ___, 113 S.Ct. at 2752. The ultimate question is discrimination vel non. Hicks, ___ U.S. at ___, 113 S.Ct. at 2753. The methodology set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), was never intended to be rigid, mechanized, or ritualistic. Id. The real issue is whether there is enough evidence to enable the fact finder to determine "whether the defendant intentionally discriminated against the plaintiff." Id. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Burdine, 450 U.S. at 251-53, 101 S.Ct. at 1093.
Failure to inform the jury of an essential legal principle constitutes reversible error. Gonzales v. Xerox Corp., 320 So.2d 163, 164-165 (La.1975). In Gonzales the court found that the trial court failed to charge the jury with "the very principle of law which the jury was acquired to apply to whatever facts were established by the evidence." Id. at 164. The jury instruction on discrimination[3] meets this requirement by clearly placing the burden on the plaintiff where it belongs and clearly posing the ultimate question of discrimination vel non for the jury. The charge was sufficient to prevent prejudice to the defendants. Had the charge required only that the plaintiff to prove that the "reason" was false, then defendants would have a basis to complain pursuant to the Hicks criticism of the Burdine case discussed previously.
Guillory argues that "[w]hen the Mid-South officers announced the October 1990 program, it affected three times as many African-American agents (12 of 48, or 25%) than white agents (58 of 690, or 8.4%). Every one of the African-American agents in New Orleans were put on the program, including all four African-American agents in Gentilly." Such statistics are not in themselves sufficient to prove intentional discrimination. However, Guillory also introduced credible evidence to show that several white agents in Mississippi were not compelled to stay in the program even though they met the same criteria as those applied to Guillory. There were white agencies in the greater New Orleans area that had more cumulative losses than Guillory, but they were not put on the program. We cannot say that the jury finding of discrimination in the administration of the program was manifestly erroneous. There was a rational basis for the jury to conclude that these were race based decisions.
Plaintiff proved his claim for discrimination by sufficient evidence in the record.
Mr. Guillory testified that in 1980 he filed a charge of race discrimination against State Farm. State Farm contends that the decision of the trial court to allow the testimony over its objection was reversible error because it was irrelevant and highly prejudicial. We disagree.
Mr. Guillory's mention of the EEOC suit was limited and dispassionate. It was not presented in a detailed, lurid or inflammatory manner. At the time that the objection was made plaintiff's counsel argued that it was relevant because dismissal by Guillory of the EEOC claim was viewed as a quid pro quo of his obtaining independent agency status. It was also relevant because it showed what Mr. Guillory went through to get his job with State Farm which would relate to the amount of mental suffering he may have experienced when he encountered the discrimination which is the subject of this suit.
Although it is a close call, when the testimony is placed in context we cannot say that the trial judge abused his broad discretion to *116 determine what evidence is admissible and what is not.

GENERAL DAMAGES.
Our role in reviewing general damages is not to decide what award would be appropriate, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den., Maritime Overseas Corp. v. Youn, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Id. The discretion vested in the trier of fact is great and even vast. Id. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Id. at 1261.
As a result of the discriminatory practices to which Mr. Guillory was subjected he suffered a great deal of mental anguish and stress. He testified that his anger, resentment, resulting moodiness, and short temper resulted in the deterioration of his marriage. Mr. Guillory testified to his humiliation which is a well known effect of discrimination. He went to see a social worker 70 times for therapy. The award of $350,000.00 is thus "not obviously the result of passion or prejudice", and it bears a reasonable relationship to the elements of proved damages. Id. at 1261. We cannot conclude from the entirety of the evidence in this record that a rational trier of fact could not have fixed the award at the level set by the jury, or that this is one of those exceptional cases where the award is so extreme as to be contrary to right reason. Id. at 1261. See also Weatherford v. Commercial Union Ins., 94-1793 (La. 2/20/95), 650 So.2d 763.
As discussed previously, the jury found that Mr. Guillory had been defamed. This Court has rejected that finding. Any damages awarded by the jury in connection with its finding that Mr. Guillory had been defamed would have been included in general damage award of $350,000.00. However, this Court remains of the opinion that the general damage award of $350,000.00 is still within the great and vast discretion of the jury. The fact that this Court finds the legal basis of Mr. Guillory's mental anguish, humiliation, etc. to be discrimination rather than defamation in no way diminishes the damages proven by Mr. Guillory.

SPECIAL DAMAGES: COST OF THERAPY
We find no error in the award of $4000.00 for the cost of Mr. Guillory's therapy. Ms. Suzanne Pauratore, B.C.S.W., testified that she met with Mr. Guillory 70 times at an approximate cost of $4,200.00.

SPECIAL DAMAGES: LOST INCOME, LOST OPPORTUNITY.
The jury award of $150,000.00 for lost income in the years 1991, 1992, 1993, and 1994 is not supported by the evidence. Mr. Guillory's income actually went up during each of those years. Mr. Guillory effectively mitigated his damages and the defendants are entitled to the benefit of that mitigation. The jury verdict was clearly contrary to the evidence or clearly wrong.

ATTORNEY'S FEES
As Mr. Guillory was successful in his discrimination claim he is entitled to $250,000.00 in accordance with the stipulation of the parties.

MR. GUILLORY WAS AN INDEPENDENT CONTRACTOR
In his petition, Guillory alleged that he was controlled in his agency by State Farm in the following particulars:
A. Plaintiff has been subject to the rules and regulations promulgated by defendants;
B. Plaintiff has been subject to inspections and directives performed and promulgated by defendants;

*117 C. Plaintiff has been subject to production requirements enunciated by defendants;
D. Plaintiff has been subject to reporting requirements promulgated by defendants;
E. Plaintiff has had to use the logos, stationary, trademarks, etc., of defendants in the operation of his agency;
F. Defendants have dictated the types of insurance policies that plaintiff can or cannot write;
G. Defendants have dictated the entities and/or individuals for whom plaintiff can or cannot write insurance policies;
H. Defendants control the means and manner of plaintiff's performance.
I. Defendants have exercised control over and directed the work of plaintiff not only as to the result plaintiff is to achieve but also as to the details by which the result is to be achieved.
At trial, plaintiff argued that these actions of State Farm and State Farm's officers in imposing the loss control programs on plaintiff, rendered his status with the Company to be that of an employee rather than that of an independent contractor. There is no dispute that according to the clear and unambiguous terms of the agent's agreement, the parties intended the agent to be an independent contractor. There is also no dispute that the actions cited in plaintiff's petition were present during the ten years Guillory was an agent prior to the adoption of the loss control programs. Plaintiff contends, however, that the actions of State Farm in restricting his right under the contract to sell automobile insurance through implementation of the loss control programs effectively changed his status from that of an independent contractor to that of an employee which was a breach of State Farm's obligation to plaintiff.
As we stated in the companion Hemmans case, the key issue in determining independent contractor status is control over the process of performing the work. Urbeso v. Bryan, 583 So.2d 114, 117 (La.App. 4th Cir. 1991); Williams v. Gervais F. Favrot Co., 499 So.2d 623 (La.App. 4th Cir.1986) writ denied, 503 So.2d 19 (La.1987). Our examination of the record clearly reveals that both prior to and following the adoption of the loss control programs, Ben Guillory had substantial control over the process of performing his own work, and is for all purposes an independent contractor.
The record shows that Guillory chose his own office location, and paid for all expenses for the maintenance of that office. He purchased all furniture and equipment necessary for that office, and paid all his own business expenses. He hired his own employees and determined and paid their salary. Guillory did not have to report his daily activities to State Farm, and decided when he worked each day and for how long. Guillory saw his agency manager, Melvin Daigrepont, approximately once or twice per month and by appointment.
Further, the record shows that the State Farm agents are not paid wages, but are compensated on a commission basis. The agents are not subject to a quota or minimum amount of sales. They do not participate in a pension plan. State Farm does not provide workers' compensation for its agents. It does not deduct social security taxes or federal or state taxes from the commission income of the agents. In addition, the IRS has determined that State Farm agents are independent contractors, and Guillory files his tax returns with state and federal governments as an independent contractor.
These factors clearly demonstrate that Guillory's status with State Farm was that of an independent contractor with control over his own work performance, rather than that of an employee. All of these factors which support Guillory's status as an independent contractor applied to Guillory before he was placed on the loss control program, and they all continued to apply after he was placed on the program.
As we stated in the companion Hemmans case, requiring a contractor to comply with the owner's rules does not signify the requisite right of operational control necessary to vitiate the independent contractor relationship, citing Davenport v. Amax Nickel, Inc., 569 So.2d 23, 28 (La.App. 4th Cir.1990), writ denied, 572 So.2d 68 (La.1991). Under the circumstances presented in this case, we find that the requirement that Guillory participate *118 for a specified length of time in loss control programs implemented by State Farm for a valid and legitimate purpose does not constitute the level of control required to make the agent an employee of State Farm. See also, Morales v. Davis Bros. Const. Co., Inc., 94-0902 (La.App. 4 Cir. 12/15/1994), 647 So.2d 1302.
The contract executed between the parties in this case and their subsequent activities clearly indicate that Guillory was an independent contractor with substantial control over his work performance, and his placement on the loss control programs in 1990 and 1991 did not change the independent contractor relationship between Guillory and State Farm. Except for placing Guillory on the loss control programs, State Farm did nothing to exercise control over the activities of Guillory or his employees nor did State Farm interfere with the operations of his agency.
If placing Guillory on the loss control programs had been a breach of Guillory's agency contract, such a breach would not, in the absence of assumption of control, destroy Mr. Guillory's status as an independent contractor. The parties clearly intended by execution of the contract that the agent would be considered an independent contractor, and their subsequent actions support this intent. Under the undisputed facts of this case we find that the placement of Guillory on the loss control programs did not change his status from independent contractor to employee. Accordingly, we find, as a matter of law, that the jury was clearly wrong in finding that Guillory had become an employee of State Farm.
In any event, Mr. Guillory failed to prove that he sustained any damages in connection with his status as an independent contractor beyond those to which this Court has determined that he is entitled by virtue of his discrimination claim. Anything more would amount to a double recovery. Mr. Guillory also failed to prove any additional damages in connection with his claims for breach of contract, intentional interference with the contract, abuse of rights and negligent misrepresentations. Therefore, a finding of liability on the part of State Farm in connection with any of those claims would not increase the amount of the award to which the plaintiff is entitled.

CONSOLIDATION
State Farm contends that the trial court erred in consolidating the Ben Guillory suit with the Charles Hemmans suit for trial. However, we have extensively discussed this issue in our opinion entitled Charles Hemmans v. State Farm, et al., and we find our reasoning in that case to be applicable here. We find consolidation was the most efficient manner of handling these suits, and we find that State Farm was not prejudiced by the trial court's consolidation of these two cases.

PLAINTIFF'S APPEAL
Ben Guillory has answered State Farm's appeal, asserting several assignments of error of the trial court. Guillory first contends that the trial court erred in failing to accept evidence and instruct the jury on plaintiff's cause of action for bad faith breach of contract and bad faith anticipatory breach of contract. For plaintiff to recover any amount in connection with these claims in addition to what he has already been awarded in connection with his discrimination claim he would have had to have proven an entitlement to his claim for a loss of a lifetime of potential earnings which Mr. Guillory values at approximately $1,500,000.00. This was based on the assumption that there was an anticipatory breach of contract which entitles him to be paid immediately his entire potential lifetime of earnings even though he continued to work for State Farm and continued to earn ever increasing amounts of money. The trial court was well within the bounds of the exercise of its sound discretion when it refused to allow the plaintiff to introduce evidence of the value of Mr. Guillory's potential future earnings and when it refused to instruct the jury on this issue in accordance with plaintiff's wishes. As there is no evidence in the record to support liability for such a claim, any evidence as to amount would be irrelevant.
Further, under the terms of the contract, State Farm was given the right to terminate Guillory at will. State Farm chose not to *119 terminate the agreement, but placed Guillory on a program where he was able to continue to write several lines of insurance and continued to earn ever increasing amounts of compensation. Under these circumstances, plaintiff has no cause of action for bad faith anticipatory breach of contract.
Plaintiff next contends that the trial court failed to instruct the jury on the law concerning unfair trade practices and failed to give the jury an interrogatory to assess damages on this theory. Plaintiff alleges that State Farm engaged in unfair trade practices against him by restricting his trade and client relations. In support of his position, plaintiff cited LSA-R.S. 22:1312, LSA-R.S. 22:1214(4) and 22:652.
We have reviewed each of these statutes and find none of them to be applicable to the present situation. LSA-R.S. 22:1312 deals with the commissioner of insurance's report of an examination, and was repealed in 1992. LSA-R.S. 22:652 protects policyholders. LSA-R.S. 22:1214(4) provides that the following is an unfair trade practice in the business of insurance:
(4) Boycott, coercion and intimidation. Entering into any agreement to commit or by an concerted action committing any act of boycott, coercion or intimidation resulting or tending to result in unreasonable restraint of, or a monopoly in, the business of insurance.
This statute which prohibits coercion and intimidation, is not in any way relevant to the matter before us. Plaintiff has no cause of action for unfair trade practices, and the argument that the trial court erred in failing to instruct the jury on this theory is without merit.

CONCLUSION
Accordingly, for the reasons assigned, we reverse that portion of the judgment of the trial court awarding the plaintiff $150,000.00 for loss of income for the years 1991, 1992, 1993, and 1994; that portion of the judgment finding liability on the part of Robert West, Guy Barr, Michael Cohen and Melvin Daigrepont is reversed and judgment is rendered in their favor dismissing them from this suit with prejudice. In all other respects the judgment of the trial court is affirmed.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
CIACCIO, and LANDRIEU, JJ., dissent with reasons.
CIACCIO, Judge, dissenting.
Because I disagree with the conclusion that plaintiff met his burden of proving racial discrimination, I must respectfully dissent from the majority opinion.
This appeal is from a judgment rendered in a consolidated lawsuit with the suit entitled Charles Hemmans v. State Farm Insurance Company, et al. The suit brought against State Farm by Charles Hemmans was virtually identical to the suit brought by Ben Guillory, and the claims were consolidated and tried together by the same jury. Hemmans, like Guillory, contended that State Farm's action in placing him on the loss control program was racially discriminatory. The most significant distinction between the two suits is that Guillory asserted additional claims for defamation and for racial discrimination in the method in which State Farm administered its loss control program while Hemmans did not.
Although these suits were tried together, a separate set of interrogatories were given to the jury by Guillory and Hemmans, and separate judgments were rendered in each case. In both cases, the jury failed to find that either Charles Hemmans or Ben Guillory was placed on the loss control program by State Farm because of their race. The jury did find in the Guillory case that the method by which State Farm administered the loss control program was racially discriminatory to the plaintiff. State Farm appealed from both judgments.
On March 21, 1995, this Court rendered an opinion in Hemmans v. State Farm, et al, No. 94-CA-0496, reversing the judgment of the trial court. (La.App. 4 Cir. 3/21/95), 653 So.2d 69. Plaintiff sought writs to the Supreme Court which were denied on June 23, 1995 by No. 95-C-1168. That decision is now final and binding on this Court inasmuch *120 as the issues disposed of in that appeal relate to the disposition of Ben Guillory's appeal.
With regard to Ben Guillory's claim of racial discrimination which was not raised in the Hemmans appeal, plaintiff contended in his pleadings and at trial that State Farm intentionally discriminated against him because of his race by:
1) placing him on the loss control program, and
2) the manner in which the program was administered.
The jury was presented with separate interrogatories on each of these assertions. On the first issue, the jury was deadlocked and failed to reach a conclusion that Mr. Guillory was placed on the program because of his race. This issue was not appealed by plaintiff and is now a final determination. However, the jury did conclude that State Farm intentionally discriminated against plaintiff in the manner in which it administered the loss control program. The majority opinion affirms this determination. I dissent because my examination of the extensive record in this case fails to show any rational basis for a finding of racial discrimination in this case.
As stated by the majority, plaintiff alleged race discrimination under two Louisiana statutes, LSA-R.S. 51:2242 and LSA-R.S. 23:1006. Both statutes were read to the jury by the trial court. However, LSA-R.S. 51:2242 only prohibits discrimination by an "employer," and we found in the Hemmans appeal that the jury was clearly wrong in finding that plaintiff had become an employee of State Farm. I agree with the majority's conclusion on this issue which follows the decision in Hemmans. LSA-R.S. 23:1006, which applies to insurers in the appointment of agents, is the only applicable statute under the circumstances presented here.
Because the Louisiana race discrimination statutes are similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted. Plummer v. Marriott Corp., 654 So.2d 843, 848 (La.App. 4th Cir.1995), citing Alphonse v. Omni Hotels Management Corp., 643 So.2d 836 (La.App. 4th Cir.1994) and Bennett v. Corroon and Black Corp., 517 So.2d 1245 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988).
The analysis for Title VII discrimination claims is well-known. It has long been established that the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 251-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In Burdine, the Supreme Court, citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set forth the basic allocation of burdens and order of presentation of proof in a discrimination action based on Title VII. The Court stated:
First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
Twelve years later, in St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court addressed the burden of proof required of a plaintiff in a Title VII action to prove intentional race discrimination by claiming he was treated differently than similarly situation white persons. The court stated that where the defendant/employer produces evidence of a reason for the adverse action against the plaintiff/employee, the plaintiff must prove "both that the reason was false, and that discrimination was the real reason" for the action. Id., ___ U.S. at ___, 113 S.Ct. at 2752.
Determining whether a defendant met its burden of production is made without reference *121 to whether the defendant was persuasive, and does not involve any credibility assessment. Hicks, ___ U.S. at ___, 113 S.Ct. at 2748. Once the defendant carries its burden of production, the presumption created by the prima facie showing is rebutted and "drops from the case." Id., at ___, ___, 113 S.Ct. at 2747, 2749, citing Burdine, 450 U.S. at 255, 101 S.Ct. at 1094-1095 (1981). To prove that discrimination was the real reason for the adverse action the plaintiff must show it would not have been taken but for discriminatory animus. Plummer, supra, 654 So.2d at 848.
Although the jurisprudence on this issue is well-established, the trial court's jury instructions did not reflect the burden-shifting proponents of plaintiff's claim. In rendering the jury instructions on the plaintiff's claims of racial discrimination, the trial judge stated as follows:
The only issue for you to decide on the basis of all the evidence presented before you is whether or not Ben Guillory has proven by a preponderance of the evidence that he was placed on loss control programs by State Farm Insurance Company because of his race or that State Farm Insurance Company administered the loss control program on which he was placed in a certain way because of his race.
Prior to this charge to the jury, State Farm requested a charge that plaintiff had the burden of proving both that the reason given by State Farm was false and that discrimination was the real reason for the action, citing Hicks, supra. The record shows that the trial court failed to include State Farm's suggested jury charge, and State Farm objected to the charge given by the trial court.
I find that the instruction given to the jury with regard to plaintiff's claim of racial discrimination was incomplete and erroneous. The jurisprudence clearly provides that in order to find discrimination, plaintiff must present a prima facie case of discrimination and the employer must be given the opportunity to present a legitimate non-discriminatory reason for the action. Should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Plummer, supra, 654 So.2d at 848, citing Burdine, supra.
The jury in this case was not instructed on the current law on discrimination claims. The trial court did not instruct the jury based on the long line of jurisprudence that once the employer presents a legitimate, non-discriminatory reason for the action, the burden then shifts to plaintiff to prove that this reason was false and that the real reason was discrimination. Under the circumstances presented here, I find that the trial court erred in failing to give an adequate instruction on this issue to the jury. As stated in Gonzales v. Xerox Corporation, 320 So.2d 163, 164-165 (La.1975), where the jury is not given an essential principle of law to apply to the facts established by the evidence, the Court of Appeal must give no weight to the judgment of the trial court which implemented the jury verdict. Under the holding of Gonzales, this Court is therefore required to make its own factual determination of plaintiff's claims. Id., at 165.
Plaintiff argues in brief that he established a prima facie case of discrimination: he is a member of the protected class of African-Americans, he was qualified for his position as agent, State Farm took adverse action against him by selecting him for a program and administering that program to deny him equal rights to contract for insurance business, and that white agents were preferred over him. Plaintiff then concludes from the verdict rendered that the jury must have found that State Farm's exculpatory reasons were not valid.
However, in light of the fact that the jury was not instructed to consider State Farm's reasons in assessing whether plaintiff met its burden of proof, this conclusion is misplaced. Even assuming plaintiff established a prima facie case, which I find not to be the case for the reasons stated herein, the reason for the action presented by State Farm would drop the presumption of discrimination and require plaintiff to prove by the preponderance of the evidence that State Farm's reason was false. This Court in the Hemmans decision *122 has previously held that the record supports a finding that the implementation of the loss control program was done for a legitimate and necessary business purpose and was based on objective criteria, and we are bound to follow that determination in this case.
In support of his claim of racial discrimination, plaintiff introduced evidence that State Farm's loss control program affected a greater percentage of African-American agencies that white agencies, and that all of the African-American agents in the New Orleans area were placed on the restrictive program for some period of time. I agree with the majority opinion that "such statistics themselves are not in themselves sufficient to prove intentional discrimination."
In finding a rational basis for the jury's finding of racial discrimination in this case, the majority relies on evidence introduced by plaintiff that certain white agents in Mississippi were not placed on the program although they met the stated criteria. However, the record shows that the restrictive program in Mississippi initially included a different set of criteria from the program on which plaintiff was placed. There has been no showing that the agents in Mississippi were in an identical situation as the agents, either white or African-American, in Louisiana. To establish a prima facie case, plaintiff must show that white agents were treated differently under circumstances "nearly identical" to his. Mayberry v. Vought Aircraft Company, 55 F.3d 1086 (5th Cir. 6/28/95). There is no such evidence in this case. When the uniform criteria was established for the entire region, all agents, including the agents in Mississippi who met the criteria, were placed on the program regardless of their race. The record shows that 70 agents out of a total of 800 were placed on the program in 1990; 58 of these agents were white and 12 were African-American.
Further, in upholding the jury verdict, the majority relies on evidence that white agencies which had higher cumulative losses than Guillory's agency but were not placed on the program. However, the record contains an abundance of evidence which shows that the amount of losses was only one of the criteria for determining eligibility for the program. State Farm also considered the frequency of accidents of an agency's policyholders as well as other factors in determining whether to place an agent on the program.
In giving credence to this evidence introduced by plaintiff, the majority seems to be in conflict with its initial finding that the loss control program itself was validated by the jury. The majority states:
A reasonable interpretation of the jury's answers to these two interrogatories is that they found nothing wrong with the creation of the loss control program by State Farm and nothing wrong with "placing" Mr. Guillory in it if State Farm concluded he fit the parameters of the program. In other words, the jury could not say with certainty that there was no legitimate business purpose for the program.
(Emphasis added.)
Even assuming that Guillory's evidence is true that white agents who were not placed on the program had higher cumulative losses than his agency, this evidence does not support a finding that State Farm's actions in administering the program were racially discriminatory. Losses were only one of the criteria used by State Farm in determining an agent's eligibility for the program, and high losses alone, in the absence of the other criteria, would not guarantee an agent's placement on the program. Again, plaintiff has failed to present evidence that white agents were treated differently under circumstances "nearly identical" to his. See, Mayberry v. Vought Aircraft Company, supra.
In claiming racial discrimination, plaintiff also introduced evidence that five of the policies he submitted to State Farm while on the program were transferred to other agents who were white. Plaintiff further testified at trial that he received harassing phone calls and visits from State Farm management personnel, and that he was threatened with termination from his agency. Plaintiff contends that these actions were racially motivated.
However, the record shows that State Farm presented a valid and legitimate purpose *123 for their action in administering the loss control program in this manner as it related to Mr. Guillory. The record shows that Ben Guillory was the only agent who was placed on the program yet failed to comply with its terms. After he was placed on the program, Ben Guillory continued to sell automobile insurance policies and submit these bound policies to State Farm in violation of the restrictive program. In an effort to encourage Guillory's participation in the program and for the benefit of the entire Company, its agents and policyholders, State Farm took the actions complained of by plaintiff.
The record contains no evidence which shows that the reasons given by State Farm were false or that they were racially motivated. The fact that some of plaintiff's policyholders were transferred to white agents following plaintiff's non-compliance with the program does not support a finding of intentional discrimination on the basis of race. Plaintiff has failed to present any evidence that similarly situated white agents were treated differently or would have been if they ignored the provisions of the program. The record shows that under the terms of the agency agreement, State Farm could have terminated Mr. Guillory at will. Although plaintiff may have proven the existence of strenuous efforts on the part of State Farm to insure his cooperation with the program in lieu of terminating his contract, plaintiff has not proven that these actions were racially motivated. Other than Guillory's own unsupported testimony, there is nothing in the record to show that Guillory was treated differently or discriminated against because of his race.
I find that plaintiff's evidence is insufficient to support a finding of intentional discrimination on the basis of race. The evidence introduced by plaintiff fails to prove that State Farm considered his race as a factor when it was implementing or administering the loss control program. State Farm articulated a valid reason for implementing the loss control program and introduced significant evidence to support this reason. State Farm proved it had a valid and legitimate purpose for its administration of the program and for its efforts to have Mr. Guillory follow the program: maintaining the effectiveness of the program to achieve the result of controlling losses. In rebuttal, plaintiff failed to sustain his burden to prove that the reasons were false or that discrimination was the real reason for State Farm's actions.
Even assuming for the sake of argument that the jury instruction was not erroneous, the record nevertheless fails to support the jury verdict. At trial, plaintiff argued that he was placed on the loss control program because of his race. Much of the evidence introduced by plaintiff on this issue relates to State Farm's decision to place Ben Guillory on the program. He argued that a greater percentage of African-American than white agents were placed on the program, and that certain white agents in Mississippi who met the stated criteria were not placed on the program. However, the jury failed to find that State Farm's actions in "placing" plaintiff on the program were racially discriminatory, although the jury did find that State Farm intentionally discriminated against Guillory in "administering" the program. The majority opinion makes no distinction between the two terms, and states:
... it is reasonable to assume that the jury felt that the program was "administered" in a discriminatory manner because State Farm intentionally failed to place similarly situated white agents in the program because of race. Administration as the term is commonly used would include the determination of which agents must participate in the program and which do not.
I disagree with this interpretation by the majority, which ignores the fact that the jury was given separate interrogatories to address each of these issues. I find no merit in the majority's analysis that the jury used the "placement" interrogatory to ratify the entire program, but included State Farm's actions in applying the program to certain agents in the "manner of administration" interrogatory. If this were the case, there would have been no need for separate interrogatories to the jury which plaintiff requested in this case.
*124 The jury specifically failed to find that Ben Guillory was "placed" on the program because of his race. Rather, the jury only found that State Farm's actions in administering the program was racially discriminatory. I find that the only reasonable interpretation of these findings is that the jury rejected plaintiff's evidence which attempted to show that State Farm's decision to place plaintiff on the program rather than other agents was based on racial considerations.
With regard to the jury's finding that State Farm's actions in administering the program were racially discriminatory, I find the evidence in the record to be insufficient to support the jury's verdict. The record shows that all agents who met the uniform criteria established by the regional State Farm office were placed on the restrictive program for some length of time regardless of their race, and there is no dispute that Ben Guillory met all of the established criteria. The record further shows that Ben Guillory was the only agent who refused to comply with the terms of the program, and that State Farm took several measures to encourage his cooperation. However, the record contains absolutely no evidence that State Farm's administration of the loss control program as it related to Ben Guillory was in any way based on plaintiff's race. Plaintiff produced no evidence that State Farm considered race as a factor when in transferred policies plaintiff had written in violation of the program or threatened to terminate plaintiff's agency contract. Merely because the policies were transferred to white agents does not support a finding that State Farm's actions were intentionally discriminatory. Rather, the record shows that the actions taken by State Farm were based on plaintiff's non-compliance and were for the purpose of maintaining the effectiveness of the loss control program. The jury verdict in plaintiff's favor has no factual basis in the record and is clearly wrong.
For the reasons stated, I find that plaintiff failed to meet his burden of proving by a preponderance of the evidence that State Farm's actions in either placing him on the loss control program or in its manner of administering the program was intentionally discriminatory. I find that the jury was clearly wrong in determining otherwise, and I would reverse the jury's determination of intentional discrimination and render judgment in favor of all defendants, dismissing plaintiff's petition against them.
LANDRIEU, Judge, dissenting.
For the reasons assigned by J. Ciaccio and those that follow, I respectfully dissent.
The jury made no finding that State Farm discriminated against Mr. Guillory by placing him along with 70 other agents (58 white and 12 African-American) in the loss control program. The jury did find that State Farm treated Mr. Guillory differently than it treated other agents in the administration of the program. It is abundantly clear, however, that the reason for such treatment was not Mr. Guillory's race but his conduct. He distinguished himself from every other agent in the program by refusing to abide by its provisions and continued to write certain types of policies contrary to State Farm's instructions. As the only agent to refuse to conform to the loss program, Mr. Guillory placed himself in class of one. When State Farm took action to force Mr. Guillory into compliance, it treated him no differently than it treated anyone else in that class. That treatment, which is the basis of the majority's holding, was necessitated by his conduct and there is no evidence to support the jury's finding that Mr. Guillory was treated differently because of his race.
Moreover, State Farm could have terminated the agency relationship with Mr. Guillory without cause and, if cause were needed, Mr. Guillory provided cause by continuing to write certain types of policies contrary to State Farm's explicit instructions. Under such circumstances, termination would not be construed as racially motivated. Rather than terminate Guillory, however, State Farm transferred the prohibited policies to other agents to deprive him of any financial incentive to further disregard its mandate and insure his future compliance. Mr. Guillory's income increased while he was on the program and the only loss he suffered was the commissions on five proscribed policies which were transferred to another agent but *125 for which Mr. Guillory was subsequently compensated. The purpose of the program was to improve the performance of the company generally and the performance of the selected agents in particular. It succeeded on both counts.
NOTES
[1] This interrogatory creates the most significant difference between this case and the case of Hemmans v. State Farm Ins. Co., 94-0496 (La. App. 4 Cir. 3/21/95), 653 So.2d 69. In Hemmans there was nothing to correspond to interrogatory 1(b) in the Guillory case.
[2] The jury's original response to this interrogatory was YES. However, when the jury was polled, the actual response was found to be NO. The trial court subsequently amended the judgment to correct this answer.
[3] The trial judge gave the following instruction: The only issue for you to decide on the basis of all the evidence presented before you is whether or not Ben Guillory has proven by a preponderance of the evidence that he was placed on loss control programs by State Farm Insurance Company because of his race or that State Farm Insurance Company administered the loss control programs on which he was placed in a certain way because of his race.